184 N.J. Super. 99 (1982)
445 A.2d 410
MANALAPAN HOLDING CO., INC., PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE TOWNSHIP OF HAMILTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1982.
Decided April 2, 1982.
*102 Before Judges MATTHEWS, PRESSLER and PETRELLA.
William C. Baggitt, III, argued the cause for the appellant.
Douglas K. Wolfson argued the cause for the respondent (Greenbaum, Greenbaum, Rowe & Smith, attorneys).
The opinion of the majority was delivered by PRESSLER, J.A.D.
This is an action in lieu of prerogative writs. Defendant Planning Board of Township of Hamilton appeals from a summary judgment declaring the preliminary subdivision application filed by plaintiff Manalapan Holding Co., Inc. (developer) approved pursuant to N.J.S.A. 40:55D-48(c). The issue raised by this appeal raises important questions concerning the construction of that statute and its relationship to N.J.S.A. 40:27-6.3.
Plaintiff is a land developer owning a parcel of land some 45 acres in size in Hamilton Township, which it proposes to develop for single-family residential use. In April 1980 it submitted a sketch plat to the township's land use coordinator, who referred it for review and classification to the township's Development Review Advisory Board (DRAB). DRAB, a committee established by the township's land development ordinances, consisted of five voting members, three of whom are members of the planning board and two are members of the board of adjustment. In addition, those municipal officials whose duties implicate land development are designated as nonvoting members of DRAB. These officials include the township engineer, planner, health officer, land use coordinator, construction official, environmental commission chairman and administrative officer. The functions assigned to DRAB by the ordinance include review of development applications for compliance with ordinance provisions, recommendation for classification of all applications, determination of required planning board and board of adjustment action, discussion with applicants of the technical aspects of the proposed plat, and recommendation of ultimate action to the planning board and board of adjustment.
*103 DRAB considered plaintiff's sketch plat on April 23, 1980 and classified the proposed development as a major subdivision. The minutes of that meeting further indicate DRAB's view of the general acceptability of the plan subject, however, to some specific recommendations regarding sewering and road alignments and locations. It was further then noted that county approval would be required for the proposed storm drainage detention basin.
Plaintiff proceeded accordingly and on June 30, 1980 submitted its formal application for preliminary major subdivision approval to the planning board, which in turn referred it to DRAB. On July 23, 1980 DRAB considered the application, together with memoranda thereon submitted by the engineering and planning departments, and voted unanimously to deem the application complete and to forward it to the planning board for public hearing and consequent action. The minutes of that meeting of DRAB also note the necessity for ultimate county approval of the retention basin as well as sewer capacity approval from the sewer department. It further appears that plaintiff, on the same day it submitted its application to the planning board, also submitted appropriate applications to the Mercer County Planning Board and the New Jersey Division of Water Pollution Control.
The planning board scheduled a public hearing on the application for August 7, 1980. Plaintiff's representatives were present at that meeting and ready to proceed. There were, however, a number of other items on the board's agenda, and in view of its policy of adjourning at 11:30 p.m., it became evident that consideration of this application would not be reached. Accordingly, plaintiff's representative asked that the matter be carried to the next planning board meeting and that it then be accorded a preference status on the agenda. The next scheduled hearing of the planning board was September 11, 1980. Prior to this date, however, the county planning board had apparently advised the township's land use coordinator that while it generally approved the preliminary subdivision application, it nevertheless *104 was insisting upon provision of an on-site storm water detention facility, and accordingly it had approved the application subject to that requirement. The county board further advised that it would not grant final approval until it had reviewed and approved the plans and calculations for such a facility.
Apparently as a result of this advisory statement from the county planning board, the township planning board decided not to go forward with the scheduled September 11 hearing. While the record is not altogether clear as to how that decision was reached and communicated, the minutes of the planning board for that meeting make clear that the cancellation of the hearing on the application had preceded the convening of the meeting, and the certification of plaintiff's general counsel and vice-president submitted to the trial court alleges that
Representatives of the Township had previously informed us of their policy of not proceeding with applications for development until such time as county approval had been received. Presumably in accordance with that policy, representatives of the Township Planning Board contacted me and informed me that the application would not be heard at the September 11, 1980, planning board meeting. Our application for development was in fact taken off the agenda.
On October 7, 1980 plaintiff submitted to the planning board a revision of the plan which accorded with the county planning board requirements and with some apparently routine recommendations previously made by the land use coordinator respecting corner lot lines and storm sewer alignment. The planning board's next regular meeting was October 16, 1980. Although hearing on plaintiff's application had not been scheduled for this meeting, a resolution was then adopted fixing October 30, 1980 as the date of a special meeting for hearing thereon. On October 24, 1980 the planning board secretary, on instruction from the land use coordinator, telephoned plaintiff's representative requesting consent to an extension of the statutory time period. Such consent was not, however, given. Plaintiff then delivered a letter to the planning board on October 30, 1980, advising that the 95-day time period prescribed by N.J.S.A. 40:55D-48(c) had expired on October 26, 1980, and accordingly its application was required to be deemed approved. The letter further pointed out that

*105 The plans have been reviewed by your professional staff and has received favorable review. Therefore we do not feel that approval of these plans is detrimental to the Township and will not cause any harm to the public. We look forward to proceeding toward final approval at a later date.
The response of the planning board was to adopt a resolution at the October 30, 1980 meeting providing that "no plans for final approval will be accepted unless and until they provide us with the information requested and unless and until they submit themselves to a public hearing for preliminary approval." Accordingly, plaintiff instituted this action seeking a declaration of its rights pursuant to N.J.S.A. 40:55D-48(c). The trial court ultimately determined on summary judgment motion that the statutory time period had expired and hence that plaintiff's preliminary subdivision application was entitled to be deemed approved. The planning board appeals.
The sole question before us is whether the trial judge properly determined that the statutory 95-day period had expired prior to October 30, 1980. We are satisfied that this determination was correct.
N.J.S.A. 40:55D-48 governs the procedure for preliminary major subdivision approval. Subparagraph (a), after requiring the local ordinance to state with reasonable specificity the information required to be submitted by a developer on his subdivision application, then requires that
If the application for development is found to be incomplete, the developer shall be notified in writing of the deficiencies therein by the board or the board's designee for the determination of completeness within 45 days of submission of such application or it shall be deemed to be properly submitted.
Subparagraph (b) of N.J.S.A. 40:55D-48 requires the submission of an amended application and a new proceeding in the event the planning board, after public hearing, requires substantial amendment in the layout of improvements. It further stipulates that if the proposed subdivision complies with the local ordinance and the applicable provisions of state statute, the planning board is obliged to grant preliminary subdivision approval. Finally, subparagraph (c) provides, in relevant part, that

*106 Upon the submission of a complete application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision.
Finally, the definitional section of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., defines a "complete application" as
... an application form completed as specified by ordinance and the rules and regulations of the municipal agency, and all accompanying documents required by ordinance for approval of the application for development, including where applicable, but not limited to, a site plan or subdivision plat; provided that the municipal agency may require such additional information not specified in the ordinance, or any revisions in the accompanying documents, as are reasonably necessary to make an informed decision as to whether the requirements necessary for approval of the application for development have been met. The application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency. An application shall be certified as complete immediately upon the meeting of all requirements specified in the ordinance and in the rules and regulations of the municipal agency, and shall be deemed complete as of the date it is so certified by the administrative officer for purposes of the commencement of the time period for action by the municipal agency. [N.J.S.A. 40:55D-3]
We are persuaded that pursuant to this statutory scheme, plaintiff's application must be deemed to have been complete no later than July 23, 1980. Not only was plaintiff never advised of any deficiencies in its application vis-a-vis local ordinance requirements but it was expressly advised on July 23, 1980 by the "Board's designee for the determination of completeness" that its application was complete. Consequently, the 95-day period expired on October 26, 1980. Since the planning board had taken no action by that date, the statutory approval mechanism was triggered. See N.J.S.A. 40:55D-10(g). And see Gridco, Inc. v. Hillside Tp. Zoning Bd., 167 N.J. Super. 348, 352-353 (Law Div. 1979); Aurentz v. Little Egg Harbor Tp. Planning Bd., 171 N.J. Super. 135 (Law Div. 1979).
It is the planning board's contention that the application could not be deemed complete until plaintiff had acquired county planning board approval of its storm water detention facility. In our view, this argument misconceives the relationship between municipal and county land development functions. As we *107 read N.J.S.A. 40:55D-48(a) in the light of the definitional provision above quoted, we conclude that the completeness of a municipal land development application must be measured by the requirements of local ordinance. We are aware that in respect of particular land developments, approval by other governmental agencies may be required in respect of specific aspects of the project at some point in the planning or construction stage. But these are aspects of the project over which those other governmental agencies have jurisdiction and that jurisdiction, while complementary to municipal jurisdiction, may nevertheless not be indirectly abrogated by the municipality in its preliminary subdivision procedures. We do not address the question of whether a municipality could provide in its subdivision ordinance that a subdivision application will not be deemed complete until the developer submits those other required governmental approvals which are relevant to that planning stage of the project. The simple fact here remains that this township's ordinance did not so require, and it is only information required by the ordinance that can be insisted upon for a completeness determination.
The planning board further argues that the time provisions prescribed by N.J.S.A. 40:55D-48(c) must be regarded as modified by the earlier legislative enactment of N.J.S.A. 40:27-6.3. That section provides in relevant part that
Each subdivision application shall be submitted to the county planning board for review and, where required, approval prior to approval by the local municipal approving authority. County approval of any subdivision application affecting county road or drainage facilities shall be limited by and based upon the rules, regulations and standards established by and duly set forth in a resolution adopted by the board of chosen freeholders. The municipal approval authority shall either defer taking final action on a subdivision application until receipt of the county planning board report thereon or approve the subdivision application subject to its timely receipt of a favorable report thereon by the county planning board.
We are, however, satisfied that the deferral option accorded to a municipality by this provision pending required county planning board approval has itself been implicitly repealed by the Municipal Land Use Law.
*108 We note first that N.J.S.A. 40:55D-37(c) provides that "the municipal planning board shall condition any approval that it grants upon timely receipt of a favorable report on the application by the county planning board or approval by the county planning board by its failure to report thereon within the entire time."
It is evident that the statutory approval mechanisms of the Municipal Land Use Act were intended to preclude the practices to which municipalities theretofore resorted to endlessly protract final determination of land development applications with the consequent result of undue harassment of developers and substantial economic prejudice to their legitimate development plans. The automatic statutory approval was, therefore, designed to encourage prompt consideration and disposition of applications for the advancement of the interests of both the developers and the public. See, generally, Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 179 (1980). And see Lizak v. Faria, 180 N.J. Super. 248 (Ch.Div. 1981); Burcam Corp. v. Medford Tp. Planning Bd., 160 N.J. Super. 258 (Law Div. 1978), aff'd as modified 168 N.J. Super. 508 (App.Div. 1979). It is in view of this essential purpose that the complex of land use statutes must be construed. In our view, it would abrogate the intention of the automatic approval provisions of the statutes which explicitly require the municipal agency to take action within a prescribed time if they were construed to permit the municipal agency unilaterally to extend the statutory time period by deferring action. We, therefore, regard N.J.S.A. 40:55D-37(c) and N.J.S.A. 40:55D-48(c), construed in pari materia, as controlling and as having by implication repealed any inconsistent provision of N.J.S.A. 40:27-6.3. Accordingly, a municipality may conditionally approve a preliminary subdivision application pending county approval. It may also, of course, deny approval. But it may not defer action if the consequence of the deferral is the unilateral extension of the 95-day statutory period.
*109 The planning board further argues, and our dissenting colleague agrees, that plaintiff's actions in respect of the scheduled August 7 meeting somehow operated to extend the statutory time period. The contention seems to be that plaintiff either consented in advance to an extension of the statutory time or agreed to a tolling of the time by asking that the matter be carried over. In our view, neither consequence may be fairly ascribed to that event. It is perfectly clear that at the August meeting it became obvious that, by reason of time constraints and the press of other business, plaintiff's application would not be reached. Rather than waiting until 11:30 p.m. for the inevitable adjournment, its representative sensibly requested a preference rescheduling. At that point, most of the 95-day period remained and timely rescheduling of the hearing posed no problem to either side. To infer from these circumstances, particularly in view of the actual rescheduling then arranged for, that this unexceptionable course of conduct in any way affected the statutory time period is contrary to common sense and the obvious import of the situation. We are, furthermore, satisfied that the planning board itself did not then regard the adjournment as having any such consequence. Rather, it made clear by its consequent rescheduling of the hearing for September 11, 1980, and its cancellation thereof, that irrespective of plaintiff's view of the matter, it did not in any event intend to proceed with the application until compliance with its unjustified demand that county approval of the storm water detention facility first be obtained. We are, moreover, persuaded that a fair and contextual scrutiny of the record does not reasonably support any other interpretation of the events of August 7 and thereafter.
Finally, the planning board argues that despite the completeness resolution of July 23, 1980, and despite its failure to have advised plaintiff in writing of any deficiencies vis-a-vis its own land use ordinances, plaintiff's application was not complete until October 7, 1980, when it submitted a revision of its plan in accordance with the county's requirements. Considering the *110 definition of completeness above quoted in light of the operative facts, we are constrained to disagree. If the October submission had any effect at all, it would have been to permit the planning board to give final rather than conditional approval to the application. Plaintiff's right to definitive planning board action was triggered by the July 23, 1980 completeness determination and could not thereafter be adversely affected by proof of compliance with the requirements of other governmental agencies. We also regard N.J.S.A. 40:55D-48(b) as inapposite in this respect. First, that section speaks only to a substantial amendment of the plan, and there is no suggestion here that the revisions of October 7, 1980 constituted a substantial amendment. Indeed, the only proofs in the record are to the contrary. More significantly, however, the provision addresses only such amendments as are required by the planning board itself as a result of and subsequent to hearing. Since there was no hearing here, the provision obviously does not apply.
We are further constrained to note that there is nothing in the record to suggest that the proposed subdivision failed in any respect to comply with all municipal land use requirements applicable to that developmental phase. Again, the contrary is true. Thus, if N.J.S.A. 40:55D-48(b) is applicable at all, its applicable provision is the mandate that subdivision approval be granted to such complying applications. We are hence satisfied that the invocation of the automatic approval provision of the statute does not in any way prejudice the public interest here.
The judgment appealed from is affirmed.
PETRELLA, J.A.D. (dissenting).
The underlying question on this appeal is whether the 95-day provision in § 36 of the Land Use Act, N.J.S.A. 40:55D-48 c, expired or should be applied under the circumstances of this case so as to require the automatic approval of plaintiff's preliminary subdivision application for a 67-lot subdivision of a 44.9-acre tract of land. The appeal implicates the interrelationship of the Land Use Act, N.J.S.A. 40:55D-1 et seq. and N.J.S.A. 40:27-6.3.
*111 Because I am of the opinion that the proper interpretation and application of the relevant statutes require a different result than that reached by the majority, I respectfully dissent. Furthermore, the factual issues here should not have been resolved on a summary judgment motion on the inadequate record in this case. See Jackson v. Muhlenberg Hospital, 53 N.J. 138 (1969). Significantly, the trial judge initially denied summary judgment to plaintiff. It appeared that he may have been troubled by the inadequate record. After a motion for reconsideration the judge changed his mind and granted plaintiff's motion, holding that 95 days had elapsed without action by the municipality or extension of time, and hence plaintiff's application was deemed granted under N.J.S.A. 40:55D-48 c. He then refused reconsideration to defendant.
This is not a case where a municipal agency has unilaterally extended a statutory time period. N.J.S.A. 40:55D-48, in its entirety, reads as follows:
a. An ordinance requiring subdivision approval by the planning board shall require that the developer submit to the administrative officer a plat and such other information as is reasonably necessary to make an informed decision as to whether the requirements necessary for preliminary approval have been met; provided that minor subdivisions pursuant to section 35 of this act shall not be subject to this section. The plat and any other engineering documents to be submitted shall be required in tentative form for discussion purposes for preliminary approval. If the application for development is found to be incomplete, the developer shall be notified in writing of the deficiencies therein by the board or the board's designee for the determination of completeness within 45 days of submission of such application or it shall be deemed to be properly submitted.
b. If the planning board required any substantial amendment in the layout of improvements proposed by the developer that have been the subject of a hearing, an amended application shall be submitted and proceeded upon, as in the case of the original application for development. The planning board shall, if the proposed subdivision complies with the ordinance and this act, grant preliminary approval to the subdivision.
c. Upon the submission to the administrative officer of a complete application for a subdivision of 10 or fewer lots, the planning board shall grant or deny preliminary approval within 45 days of the date of such submission or within such further time as may be consented to by the developer. Upon the submission of a complete application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by *112 the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision.
This statute must be considered along with various other existing statutes, specifically N.J.S.A. 40:27-6.3, which provides:
Each subdivision application shall be submitted to the county planning board for review and, where required, approval prior to approval by the local municipal approving authority. County approval of any subdivision application affecting county road or drainage facilities shall be limited by and based upon the rules, regulations and standards established by and duly set forth in a resolution adopted by the board of chosen freeholders. The municipal approval authority shall either defer taking final action on a subdivision application until receipt of the county planning board report thereon or approve the subdivision application subject to its timely receipt of a favorable report thereon by the county planning board. The county planning board shall report to the municipal authority within 30 days from the date of receipt of the application. If the county planning board fails to report to the municipal approving authority within the 30-day period, said subdivision application shall be deemed to have been approved by the county planning board unless, by mutual agreement between the county planning board and municipal approving authority, with approval of the applicant, the 30-day period shall be extended for an additional 30-day period, and any such extension shall so extend the time within which a municipal approving authority shall be required by law to act thereon.
In addition, N.J.S.A. 40:55D-37 c provides:
Each application for subdivision approval, where required pursuant to section 5 of P.L. 1968, c. 285 (C. 40:27-6.3), and each application for site plan approval, where required pursuant to section 8 of P.L. 1968, c. 285 (C. 40:27-6.6) shall be submitted by the applicant to the county planning board for review or approval, as required by the aforesaid sections, and the municipal planning board shall condition any approval that it grants upon timely receipt of a favorable report on the application by the county planning board or approval by the county planning board by its failure to report thereon within the required time period.

I
There are two aspects to this appeal  the factual setting and the interpretation of the relevant statutes. Initially, it is appropriate to deal with the former. Plaintiff has contended that the 95-day time period contained in N.J.S.A. 40:55D-48 c expired October 27, 1980. It is conceded that subsequent to the filing of its application for a subdivision with the Hamilton Township Planning Board ("board" or "defendant") it filed an application for county planning board ("county board") approval. As of July 23, 1980 when the application to the municipality was *113 determined by the local agency to be facially complete, see N.J.S.A. 40:55D-3, county board approval had not yet been received. Defendant scheduled a hearing on plaintiff's plan for August 7, 1980. Plaintiff's application was listed as No. 16 on the agenda. It does not seem to be disputed that the general policy of the board was not to work past 11:30 p.m. At about 8:05 p.m., at the start of the meeting, and before any application had been heard, Mr. Reinhart, vice-president and general counsel of plaintiff and its parent company, Hovnanian Enterprises, advised defendant's chairman that plaintiff "would have no problem with consenting to an extension of time...." The record discloses the following exchange:
Mr. Chairman, my name is Peter Reinhart. I'm the attorney for the one you just mentioned, Manalapan Holding Company and I know we're Number 16. We would have no problem with consenting to an extension of time on that one to another meeting. We have a problem we are trying to work out with the County Planning Board and I think it would be in the interest of this Board as well as interest of time if we can put that off until whenever your next meeting is.
Mr. Hollins  you're requesting then that that application ...
Mr. Reinhart  be carried to whenever your next meeting is ...
Mr. Hollins  that it be put off 'til September ...
Mr. Reinhart  whenever your next meeting is ...
It is clear that not only was plaintiff consenting to an extension of time but that it was having "a problem" with the county board and wanted and requested additional time to resolve that issue first. Although it might be speculated that plaintiff's application might not have been reached that night, the record is deficient in that regard, and we have no way of knowing that for sure. It might just as well have been that plaintiff thought there were too many members of the public present. It is more likely, in accord with what plaintiff's attorney said, that because it did not have county board approval, it did not want to take up everyone's time on an application which had not been acceptable to the county board. This impliedly recognized that county board conditions or approval might result in other changes which could further affect the preliminary plan submitted to defendant. In any event, it hardly can be said with certainty *114 that plaintiff's application would not have been heard at all that evening. Hence, the municipality should not be faulted or penalized when the hearing was not held in August because of the applicant's request.
Nor can it be seriously argued that the words "carried to whenever your next meeting is" only evince a request for an adjournment without actually consenting to an extension of the 95-day time limit. Plaintiff was represented by house counsel presumably familiar with land development applications and personally knowledgeable in planning procedures. Consent to extensions of time is not a new concept introduced by the Land Use Act. See, e.g., N.J.S.A. 40:55-1.18, and compare N.J.S.A. 40:55-45 (both sections now repealed). Plaintiff knew that time was needed and it wanted the extension because of the problem with the county board. In requesting the extension plaintiff's general counsel had not requested or mentioned the possibility of proceeding then, or even in September, subject to future county board action.
Furthermore, the record is not at all clear, as the majority strains to conclude, that it was the unilateral decision of the board not to consider the application when the matter arose again in September. The majority accepts without question the affidavit of plaintiff's counsel, which is untested by cross-examination, referring to his "presumptions" about the reasons for the matter not proceeding on September 11. Presumptions are not enough. Where there are questions of fact, affidavits provide an inappropriate basis for their resolution. Such affidavits are of value on a motion for summary judgment only when they demonstrate the absence of a factual dispute. Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 405 (1958). Here, the affidavit at best created an issue of fact. Both the briefs and oral argument before the trial court sharpened the contradiction or conflict between the parties as to what actually happened. That dispute is sufficient to preclude summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954). Doubts should be resolved in favor of protecting the public interest.
*115 By the September 11, 1980 meeting date plaintiff's problems (however great or small) with the county board were not resolved. It was represented to us at oral argument that it was not until the end of September or early October that plaintiff agreed to modify its plans in accordance with the requirements of the county board, and thus it was not until after that time that a line was drawn on applicant's plans for the detention area requested by the county board. There is nothing in the record to show that that plan with the new line was ever submitted to defendant.[1] In light of that, as well as the request by plaintiff's attorney for an extension of time, I would conclude that plaintiff either consented to an extension of the 95-day time limit of a bare minimum of 35 days from August 7 through September 11, 1980 or, on principles of waiver or estoppel, should be precluded from having timely invoked the statutory 95-day time period in this case.
Indeed, when on October 24, whether sensibly or as a matter of caution, a board employee contacted plaintiff's counsel requesting consent to an extension of the 95 days and plaintiff's appearance at the special meeting on October 30, 1980 for a hearing, plaintiff's counsel waited until October 30 to respond by letter indicating that it was now taking the position that the 95 days had run and that it sought to take advantage of the automatic preliminary approval provisions. Of course, the municipal planning board would not normally be bound by misstatements of clerical assistants. Admittedly, a municipal corporation may be bound, on the concept of estoppel, to good faith, erroneous actions in issuing a building permit based on a debatable interpretation of the zoning ordinance by an employee who acts within the ambit of his authority. See Jantausch v. Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957), *116 where a homeowner had completed alterations on the strength of an improperly issued building permit. However, where, as here, an employee makes a good faith representation to an individual, an estoppel may not be invoked where the employee was not authorized to act or where his interpretation was contrary to law. Debold v. Monroe Tp., 110 N.J. Super. 287, 293 (Ch.Div. 1970), aff'd o.b. 114 N.J. Super. 502 (App.Div. 1971), cert. den. 59 N.J. 296 (1971). In Debold it was held that unauthorized representations by the mayor and township attorney which were contrary to law, and reliance upon those representations, created no estoppel against the township. See, also, Weber v. Pieretti, 72 N.J. Super. 184, 201 (Ch.Div. 1962), aff'd 77 N.J. Super. 423 (App.Div. 1962). Here it can hardly even be said that any reliance thereon by plaintiff was to its detriment.
Under the circumstances I would add on a minimum of 35 days from the October 27, 1980 date which the majority accepts as the date the statutory 95 days expired. This would result in December 1, 1980 being the earliest that the 95 days would have expired under N.J.S.A. 40:55D-48 c. However, within that time period the municipality had scheduled and was ready to proceed on October 30, 1980 with a special meeting devoted solely to plaintiff's application. When plaintiff refused and failed to attend that special meeting defendant adopted a resolution noting such refusal. The October 30 resolution also said:
........
WHEREAS, the Planning Board finds as a fact that the application indeed has never been complete for the reference by the Development Review Advisory Board on July 23rd, was subject to the condition that the applicant comply with County Planning Board approval and furnish additional Engineering details, and
The Planning Board further finds as a fact that the applicant itself requested an extension of the August meeting of the Planning Board and the public hearing, and
WHEREAS, the Planning Board finds as a fact that the applicant has not furnished the Planning Board with sufficient information upon which it can make a reasonable judgment as to whether the applicant has complied with the Subdivision Code and with the Development Regulations of the Township of Hamilton;

*117 NOW, THEREFORE, BE IT RESOLVED on this Thirtieth Day of October, 1980 that this matter be continued, that the applicant be informed that we are awaiting the report from the County Planning Board, that we are awaiting the information for the Engineering Department so that they can make a judgment, and
BE IT FURTHER RESOLVED that the Attorney be directed to communicate with the applicant and it's [sic] attorney and indicate to them that no plans for final approval will be accepted unless and until they provide us with the information requested and unless and until they submit themselves to a public hearing for preliminary approval.
In my view, this resolution is fairly construable as a resolution deferring action on plaintiff's application for preliminary approval until the county board reported thereon, and more significantly, until plaintiff submitted to a public hearing. Thus, it complied essentially and substantially with the first option referred to in N.J.S.A. 40:27-6.3 with respect to deferring action.

II
However, the majority chooses to reach for implied repeal of inconsistent provisions of N.J.S.A. 40:27-6.3.[2] Although the Legislature may indeed have been concerned about situations involving claims of undue delay by a municipality in certain cases, it was also fully aware that the public interest had to be protected. It has to be obvious that there is an equal danger of stalling by an applicant who may have a controversial or questionable proposal (this is not to suggest that such was the case here) in order to allow the 95-day period to elapse. The Legislature in its wisdom may have determined it was preferable, on balance, that an application be deemed approved after the specified number of days had run, rather than be deemed denied after the running of a specified statutory time period as was the case in various instances under prior planning and zoning laws. However, the Legislature was also cognizant, as we must be, of the competing public interests here. It thus expressly allowed *118 for an extension of that time. Surely, considering the Legislature's express admonition for liberal construction of the act in furtherance of its broad purposes, N.J.S.A. 40:55D-92, it makes little sense for a planning board to be forced invariably to deny outright an application in situations where the applicant asks for more time. A relatively slight delay may save unnecessary expense and potential problems. After all, an applicant must still obtain final approval. See N.J.S.A. 40:55D-50.
But the result of the majority's reasoning may well be to force automatic denials by planning boards in cases where they may not be warranted or necessary. The case presented when the board scheduled the special meeting could certainly not be viewed as a municipality's effort "to endlessly protract final determination...." Any delay thereafter was a result of plaintiff's refusal to participate in a public hearing.[3] The majority's construction of the implicated statutory provisions here has the further result that essentially unscrutinized development would occur even though there was never a public hearing held and the municipal planning board never had an opportunity to consider the impact of whatever any ultimate county board requirement was. It is an insufficient argument to say that whatever the county did had no bearing in any event. Obviously, action by one governmental unit with respect to a development plan may well conflict with a proposal by another governmental unit. Each is entitled to know about and see what the other governmental unit is requiring. There was no unreasonable or "unjustified demand" made by the planning board.
It is impossible to say with certainty on this record that after there was a change made by the county board the original application was still complete without the board or the court really knowing how any required changes affected the thrust of the application. These were not changes contemplated by N.J. *119 S.A. 40:55D-48 b because they were not required by the local board. Unlike my colleagues, I am not prepared to say that the change required by the county board was either insubstantial, insignificant or irrelevant. Neither the planning board (as far as this record shows) nor this court has ever seen the exhibit or the plan as amended by plaintiff. After all, the citizens, taxpayers and even future developers in the surrounding area in Hamilton Township will have to live for years to come with what is ultimately located on the property and how it is located. Nor is it sufficient to say that only preliminary subdivision approval is involved, especially when such preliminary approval confers certain protected rights. See N.J.S.A. 40:55D-49.
It is difficult to understand why plaintiff took such a hard and fast position with respect to refusing to participate in the October 30 scheduled public hearing when there was not even a suggestion in the record of opposition to its proposal. It chose to gamble on enforcement of the 95-day period and initially lost before the trial judge before he consented to reconsider. It is obvious that one of the intentions of the Land Use Act is also to provide for a public hearing and an airing of the deliberations of the planning board. Allowing things to happen by inaction is fraught with as much potential for mischief as allowing action to be taken without the knowledge of the public. Indeed, it was for such reasons that the Open Public Meeting Law, commonly referred to as the "Sunshine Law," was enacted. N.J.S.A. 10:4-6 et seq.
The Land Use Act does put a burden on the municipal land use agencies to act within prescribed time limits, or consensual extensions thereof. See, e.g., N.J.S.A. 40:55D-10 g, 40:55D-17 c, 40:55D-46 a and c, 40:55D-46.1, 40:55D-47, 40:55D-48 a and c, 40:55D-50, 40:55D-61, 40:55D-67, 40:55D-73 b and 40:55D-76 c. However, insofar as the act was declared "necessary for the welfare of the State and its inhabitants" it must be construed liberally to effectuate the purposes thereof. N.J.S.A. 40:55D-92. First among the purposes of the act listed by the Legislature in N.J.S.A. 40:55D-2 a is:

*120 To encourage municipal action to guide the appropriate use or development of all lands in the State, in a manner which will promote the public health, safety, morals, and general welfare; .... [Emphasis supplied]
Similarly, N.J.S.A. 40:55D-70 d, made applicable to a planning board by N.J.S.A. 40:55D-60, states that no variance or other relief shall be granted a developer unless it can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." [Emphasis supplied].
To enable the citizens of the municipality (who, in fact, are the individuals most affected by large-scale developments in their community) to partake in the process, the act provides for public hearings on "each application for development, or adoption, revision or amendment of the master plan." N.J.S.A. 40:55D-10 a. Furthermore, a brief notice of the decision resulting from such a hearing must be published in the official newspaper of the municipality, if one exists, or in a newspaper of general circulation in the municipality. N.J.S.A. 40:55D-10 i. Thus, there is an apparent tension within the act between assuring timely action on the part of the agency charged with reviewing a particular application for approval and maintaining the public safety and general welfare. In my opinion neither the law nor the facts in the instant appeal present an appropriate case for the strict, technical enforcement of the 95-day time limit contained in N.J.S.A. 40:55D-48 c, particularly on a motion for summary judgment.
The majority, however, takes the position that defendant could not defer action under N.J.S.A. 40:27-6.3, concluding that N.J.S.A. 40:55D-37 c and 40:55D-48 c, "construed in pari materia, as controlling as having by implication repealed any inconsistent provision of N.J.S.A. 40:27-6.3." However, the question is not whether sections 37 c and 48 c as provisions of the same act are to be read in pari materia (which of course they must be as part of the same enactment), but whether those sections may be read in pari materia with N.J.S.A. 40:27-6.3. I conclude that they should and must be so read.
*121 It can hardly be said that the Legislature was unaware of the provisions of N.J.S.A. 40:27-6.3 when it referred to that section expressly at least six times in the Land Use Act itself. See N.J.S.A. 40:55D-37 c, 40:55D-47, 40:55D-50, 40:55D-61, 40:55D-67 and 40:55D-76 c. Thus, it incorporated the very provisions of N.J.S.A. 40:27-6.3 within the Land Use Act on numerous occasions. The Legislature, being fully aware of the provisions of the other act, could easily have amended it if that was its remotest intent. Its failure to do so speaks loudly and clearly. It surely would not have gone to the extent of referring to it six times in the Land Use Act if it had intended to change its interpretation. See In re Glen Rock, 25 N.J. 241, 249 (1957), and Kessler v. Zink, 136 N.J.L. 479, 482 (E. & A. 1948). There is a presumption against legislative intent to effect a change of substance by a revision of laws. In re Glen Rock, supra.
Furthermore, N.J.S.A. 40:55D-37 c merely provides that any approval the board grants must be conditioned on county board action. This would only apply if the planning board chooses to approve, rather than to defer or deny. Nor does N.J.S.A. 40:55D-22 b impliedly repeal N.J.S.A. 40:27-6.3 when it states "the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency; ...." [Emphasis supplied]. Obviously, what occurred here did not necessarily constitute an appropriate instance. Accordingly, the "shall" need not here be read as mandatory. N.J.S.A. 40:55D-22 b also provides that the decision shall be made within the time provided in the act or within an extension of time agreed to by the applicant "unless the municipal agency is prevented or relieved from so acting by the operation of law." That subsection reads in its entirety:
In the event that development proposed by an application for development requires an approval by a governmental agency other than the municipal agency, the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency; provided that the municipality shall make a decision on any application for development within the time period provided in this act or within an extension of such period as has been *122 agreed to by the applicant unless the municipal agency is prevented or relieved from so acting by the operation of law.
The last clause of N.J.S.A. 40:55D-22 b negatives any intent of implied repeal in recognizing that the municipality may at times be prevented or relieved from acting either by the constitution or by statutory or decisional law.
The majority opinion's conclusion that N.J.S.A. 40:55D-37 c and 40:55D-48 c impliedly repealed N.J.S.A. 40:27-6.3 is erroneous and unnecessary. It is a long-established principle of statutory construction that implied repealers are disfavored in the law. See, e.g., Brewer v. Porch, 53 N.J. 167, 173 (1969). Enactment of the Land Use Act with specific references to N.J.S.A. 40:27-6.3 in effect reenacted that section and incorporated it in toto into the Land Use Act. Cf. Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 74 (Law Div. 1975). There is no rational reason that the statutes cannot be read in pari materia to result in a unitary and harmonious law to accomplish the overall legislative scheme in a reasonable manner. See Lawrence v. Butcher, 130 N.J. Super. 209, 212 (App.Div. 1974). The Legislature is presumed to be familiar with its prior legislation. In re Mercer Cty., 172 N.J. Super. 406, 409 (App.Div. 1980). It certainly would have been an easy matter to amend N.J.S.A. 40:27-6.3 or expressly list it in § 80, the repealer section, of L. 1975, c. 291. The absence of even a general provision in the Land Use Act prescribing repeal of inconsistent statutes further militates against any implied repealer. The Legislature has frequently used such language when it determined that one statutory scheme was to prevail over another. See, e.g., N.J.S.A. 2C:98-2, N.J.S.A. 13:1D-19 and N.J.S.A. 17:46B-62.

III
In summary, there was an extension of time of at least 35 days and the October 30 resolution was an effective deferring of action under authority of N.J.S.A. 40:27-6.3 because it was adopted before the December 1 date. There is nothing that requires that an extension of the time period in N.J.S.A. 40:55D-48 c can occur only when the period is about to expire.
*123 Thus, I would conclude that the November 27, 1980 publication by plaintiff of a notice that its application was deemed to have received preliminary subdivision approval was ineffective and self-serving. Plaintiff should have submitted to a public hearing on its application or revised application reflecting the county board's change at the scheduled public hearing of October 30, 1980. Having failed to appear at all at the October 30, 1980 special meeting, it cannot now complain that more than 95 days would have run after December 1 even if a minimum of the 35 days between the August and September meeting were added.
I would reverse and remand to the trial judge with instructions to remand the matter to the municipal planning board for a hearing.
NOTES
[1] It was represented at oral argument by defendant's attorney that the plan as modified by the county board had not been submitted to the municipal planning board before the litigation. It cannot be concluded that it has been submitted to date based on the record.
[2] Implied repeal of any inconsistent provision could not have been intended because this section is expressly referred to in N.J.S.A. 40:55D-37 c, 40:55D-47, 40:55D-50, 40:55D-61, 40:55D-67 and 40:55D-76 c.
[3] Query, whether plaintiff could not have participated in the public hearing "without prejudice" and expressly reserved its legal position.