268 N.J. Super. 371 (1993)
633 A.2d 1001
STAR ENTERPRISE, A NEW YORK GENERAL PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
CHRISTINA WILDER, AS CLERK OF THE TOWNSHIP OF HAMILTON, AND ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF HAMILTON, MERCER COUNTY, A MUNICIPAL AGENCY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1993.
Decided November 23, 1993.
*372 Before Judges MICHELS and SKILLMAN.
Philip E. San Filippo argued the cause for appellant (Cassidy, Foss & San Filippo, attorneys; Mr. San Filippo, of counsel; Rick Brodsky and Stacy M. Noonan, on the brief).
*373 Leo R. Zamparelli argued the cause for respondents.
The opinion of the court was delivered by SKILLMAN, J.A.D.
On or about January 24, 1992, plaintiff filed an application with defendant Hamilton Township Zoning Board of Adjustment ("Board") seeking various use variances, bulk variances and preliminary site plan approval to refurbish an existing Texaco Service Station, including the "installation of a free-standing canopy over new dispenser islands, multi-product dispensers and kiosk, free-standing accessory car wash and underground storage tanks." On February 19, 1992, the Board determined that plaintiff's application was complete; however, it did not begin the hearing on plaintiff's application until five months later, on July 14, 1992. By letter dated June 12, 1992, plaintiff's counsel consented to "extend the time within which the Zoning Board of Adjustment must grant approval in this matter to July 31, 1992." The Board spent its entire session on July 14, 1992, receiving testimony relating to plaintiff's application, but was unable to complete the hearing on that occasion. The Board therefore adjourned the matter, with plaintiff's apparent acquiescence, until its August 11, 1992 meeting. However, the Board failed to request an additional extension of time within which to act beyond the July 31, 1992 date to which plaintiff had previously consented.
Plaintiff appeared at the August 11th hearing date, apparently prepared to proceed. But only six members of the Board were present, and the approval of plaintiff's application, which included use variances, required an affirmative vote of a "super-majority" of five Board members. Ostensibly because of this circumstance, plaintiff requested the Board to adjourn the matter until its September meeting.
However, on the very next day, August 12, 1992, plaintiff gave notice to the Township Clerk, the Board's Secretary, all known objectors, and all property owners within 200 feet of its property, that it was claiming an automatic approval pursuant to N.J.S.A. *374 40:55D-76(c). The Board's attorney subsequently informed plaintiff that he had "instructed ... the administrative officer of the Township not [to] issue a Certificate of Approval of the application based upon the failure of the Board to act in a timely manner," and that plaintiff's application "has been scheduled for a September hearing, and appropriate action will be taken by the Board at that point."
Plaintiff failed to attend the September 8th meeting, but the Board nevertheless completed its hearing and voted to deny plaintiff's application. The Board's action was memorialized on October 13, 1992 by a resolution containing findings of fact and conclusions of law.
Plaintiff then filed this prerogative writ action claiming that its application had been automatically approved. The trial court rejected plaintiff's claim and granted the Board summary judgment. In addition, the court remanded the matter to the Board "for expedited completion of the hearings," upon plaintiff's notification to the Board of its desire to supplement the record. The parties advised us at oral argument that plaintiff chose not to avail itself of this opportunity.
Plaintiff's claim that its development application was automatically approved is based upon N.J.S.A. 40:55D-76(c), which provides in pertinent part:
Whenever an application for development requests relief pursuant to subsection b. of this section, the board of adjustment shall grant or deny approval of the application within 120 days after submission by a developer of a completed application to the administrative officer or within such further time as may be consented to by the applicant.... Failure of the board of adjustment to act within the period prescribed shall constitute approval of the application, and a certificate of the administrative officer as to the failure of the board of adjustment to act shall be issued on request of the applicant, and it shall be sufficient in lieu of the written endorsement or other evidence of approval herein required, and shall be so accepted by the county recording officer for purposes of filing subdivision plats.
Our courts have repeatedly indicated that such automatic approval provisions "should be applied with caution." King v. New Jersey Racing Comm'n, 103 N.J. 412, 422, 511 A.2d 615 (1986) (quoting Aurentz v. Planning Bd. of Township of Little Egg *375 Harbor, 171 N.J. Super. 135, 142-43, 408 A.2d 140 (Law Div. 1979)); Mastro v. Board of Trustees of Pub. Employees' Retirement Sys., 266 N.J. Super. 445, 450, 630 A.2d 289 (App.Div. 1993); DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., 225 N.J. Super. 341, 347, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988); see also Manalapan Holding Co., Inc. v. Planning Bd. of Hamilton Township, 92 N.J. 466, 457 A.2d 441 (1983); Chapel v. Board of Trustees of Pub. Employees Retirement Sys., 258 N.J. Super. 389, 396-99, 609 A.2d 1294 (App. Div. 1992); D'Anna v. Planning Bd. of Township of Washington, 256 N.J. Super. 78, 81-84, 606 A.2d 417 (App.Div.), certif. denied, 130 N.J. 18, 611 A.2d 656 (1992).
In arguing that its application was automatically approved under N.J.S.A. 40:55D-76(c), plaintiff relies upon the Court's statement in Manalapan Holding Co., Inc. v. Planning Bd. of Hamilton Township, supra, 92 N.J. at 477-78, 457 A.2d 441, involving another automatic approval provision of the Municipal Land Use Law, that "[a] municipality cannot unilaterally extend the period within which it must consider a subdivision application." However, the Court in Manalapan, reflecting the caution with which automatic approval provisions are applied, held that the developer was not entitled to such approval:
While there is no suggestion of bad faith, sharp practice or overreaching on the part of the developer in seeking to take advantage of the automatic approval, there is, also, no suggestion of bad faith, prevarication or obstructionism by the municipality in granting postponements when it did. The course of events created by both parties bespeaks inadvertence, ignorance or misunderstanding as to the operation and mechanics of the statute in triggering the extension period and preserving the opportunity for a public hearing on a preliminary subdivision application.... [W]e are satisfied that under all the circumstances, the appropriate disposition of this appeal is to require that the public hearing on plaintiff's application for preliminary subdivision approval be held forthwith by the Township Planning Board.... This course better serves the public interest and does not treat the applicant unfairly. The holding of a public hearing also reasonably meets the MLUL's statutory ends since the municipality here did not engage in untoward delaying tactics, simply to frustrate or forestall the applicant, an evil which the statute was specifically designed to overcome.

[Id. at 481-82, 457 A.2d 441].
*376 In a recent decision interpreting the same automatic approval provision involved in Manalapan, we held that a developer was not entitled to the benefit of automatic approval when a substitute clerk misfiled a revised application submitted by the developer to replace one which had been deemed incomplete. D'Anna v. Planning Bd. of Township of Washington, supra, 256 N.J. Super. at 84, 606 A.2d 417. We observed that "application of the statutory time constraints [respecting automatic approval] must be anchored in the reason for their existence. The evil which the automatic approval provisions were designed to remedy was municipal inaction and inattention." Id. at 82, 606 A.2d 417 (quoting Allied Realty, Ltd. v. Borough of Upper Saddle River, 221 N.J. Super. 407, 418, 534 A.2d 1019 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1284 (1988)). We noted that the record did not contain evidence of "bad faith, sharp practice, overreaching or dilatory conduct on the part of the Board," but was rather one which "bespeaks of inadvertence, ignorance or misunderstanding." Id. at 83, 606 A.2d 417 (citation omitted). We further observed that the legislative purpose behind adoption of the automatic approval statutes "would be unjustifiably distorted in a manner patently subversive to the public interest if ... [such statutes] were to be applied in a mechanical fashion." Id. at 82, 606 A.2d 417 (citations omitted).
Following the principles expressed in Manalapan and D'Anna, we are satisfied that the trial court correctly concluded that plaintiff was not entitled to automatic approval of its application. Although the Board did not expressly request plaintiff to consent to a further extension of time to complete the proceedings when it adjourned the hearing from July 14, 1992 to August 11, 1992, plaintiff acquiesced in that adjournment, thus conveying the impression that it was consenting to whatever extension of time was required to resume the proceedings on August 11th. Plaintiff reinforced this impression when it appeared on August 11th prepared to continue with the presentation of its case, but then *377 requested a further adjournment of the proceedings until September due to the absence of some Board members. Therefore, we conclude that plaintiff's actions on July 14, 1992 and August 11, 1992, constituted an implied consent to an extension of time at least until the Board's September meeting.
The circumstances in this case are significantly different from those in Manalapan, in which a developer requested the planning board to grant a postponement until its next monthly meeting, which was held a month and a half before expiration of the period within which the board was required to act. The Court concluded that "an extension of the statutory time limit was not within the contemplation of either party" because the board would have had sufficient time to issue a final decision before the statutory deadline even after the one month extension. 92 N.J. at 478, 457 A.2d 441. In contrast, plaintiff acquiesced in an adjournment of this matter to a date which it knew was beyond the extended date for Board action, and it requested a further adjournment when it appeared on that date.
While it is undoubtedly the better practice for a municipal land use agency to secure a developer's express consent to an extension of time either in writing or on the record, N.J.S.A. 40:55D-76(c) does not mandate that consent be in this form. Moreover, as stated in Allied Realty, Ltd. v. Borough of Upper Saddle River, supra, 221 N.J. Super. at 420, 534 A.2d 1019, "the beneficent public purpose sought to be achieved by the automatic approval mechanism ... should not be used as a trap for the unwary." Therefore, we conclude that plaintiff's consent to adjournments of the hearing on its application constituted an implied consent to an extension of the statutory deadline for a decision under N.J.S.A. 40:55D-76(c).
Affirmed.