907 A.2d 1018

INFINITY OUTDOOR, INC., PETITIONER–APPELLANT, v.
DELAWARE AND RARITAN CANAL COMMISSION,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued Telephonically September 22, 2006—Decided October 12, 2006.

Before Judges LEFELT, PARRILLO and SAPP–PETERSON.

*Jeffrey M. Hall* argued the cause for appellant (*Fox Rothschild*, attorneys; *Mr. Hall*, of counsel; *Catherine B. Rinaldi*, on the brief.)

*Lewin J. Weyl*, Deputy Attorney General, argued the cause for respondent (*Anne Milgram*, Acting Attorney General of New Jersey, attorney; *Michael J. Haas*, Assistant Attorney General, of counsel; *Mr. Weyl*, on the brief.)

The opinion of the court was delivered by

PARRILLO, J.A.D.

Petitioner Infinity Outdoor, Inc. (Infinity) appeals from a final administrative decision of the Delaware and Raritan Canal Commission (DRCC) denying its application for approval of a proposed outdoor advertising structure and for waiver of visual impact regulatory requirements. We affirm.

The proposed structure was to be a two-sided single-pole billboard, seventy-seven feet in height, showing to traffic two fourteen by forty-eight square foot advertising surfaces. The structure was to be erected on property located at New York Avenue and Pear Street, immediately west of Route 1 Southbound in Trenton, in an area zoned primarily for industrial and commercial use but, critical for present purposes, ten feet from the Delaware and Raritan Canal State Park (Park) boundary.

The canal has been designated a vital source of water supply and the narrow band of land along the canal banks owned by the State is of historic, ecological and recreational value to the citizens of New Jersey. *N.J.S.A.* 13:13A–2a. In recognition of the importance of this State resource, the Legislature has entrusted the DRCC with the responsibility of "preserv[ing], maintain[ing], improv[ing], and enlarg[ing]" the Park, *N.J.S.A.* 13:13A–2b; preparing and implementing a master plan for the physical development of the Park, *N.J.S.A.* 13:13A–11h; *N.J.A.C.* 7:45–1.1; and protecting the Park from myriad local zoning "expediencies." *N.J.S.A.* 13:13A–2a. To this end, the Legislature has provided for a review

zone, consisting of a "region appertaining to and including the [P]ark ... in which proposed 'projects[ ]' ... may cause an adverse impact on the [P]ark," *N.J.S.A.* 13:13A-3f, within which any proposed project must be "review[ed] and approv[ed], reject[ed], or modifi[ed]" by the DRCC. *N.J.S.A.* 13:13A-14c.

In this regard, the DRCC is authorized to determine the extent and limits of the region to be designated as the "review zone." *N.J.S.A.* 13:13A-14a. Thus, in this setting, governing regulations prohibit advertising structures within 200 feet of the Park. *N.J.A.C.* 7:45-7.4(d)3. However, applicants are afforded the opportunity to seek visual impact waivers if they completely shield the structure from the Park with vegetative screening. *N.J.A.C.* 7:45-9.7(a). The regulations also allow for hardship waivers based on economic hardship. *N.J.A.C.* 7:45-9.3.

Because the proposed billboard fell well within the "review zone," petitioner was required to obtain the DRCC's approval, *N.J.A.C.* 7:45-7.4(a), after first having secured a height variance from the City of Trenton Zoning Board of Adjustment, which was granted on February 17, 1999. *N.J.S.A.* 13:13A-14c. Consequently, on August 27, 1999, petitioner submitted its initial application to the DRCC seeking a visual impact waiver for approval to erect the billboard structure. The DRCC denied the application on October 20, 1999, without prejudice however, allowing petitioner to submit a new application with a landscape screening plan.

Accordingly, on January 10, 2000, petitioner submitted a new application with landscaping involving the use of red cedar trees to buffer the view from the Park, and providing possible access to the Park from an adjoining street, New York Avenue. Because the proposed pedestrian access to the Park's towpath required an easement, petitioner requested month-to-month extensions from March to August 2000 to allow for negotiations with a third party. Despite the several continuances granted by the DRCC, petitioner considered its application for approval "complete" as of March 8, 2000. In any event, after having successfully completed negotiations, petitioner further amended its application on August 15,

2000, proposing to increase the structure's setback from the Park by twenty-eight feet and submitting new landscaping plans and plan views of the advertising surfaces from varying distances. Because it needed more time to review the most recent amendment, the DRCC asked for a continuance from the August 2000 agenda, on which the matter originally had been placed. Petitioner agreed and a proposed date was set after the scheduled September 21st meeting.[1]

On September 20, 2000, the day before the scheduled meeting, the DRCC informed petitioner that its application was incomplete because its August 15, 2000 revision changed the structure's location, requiring municipal land use approval prior to DRCC consideration, which it had not obtained from the City of Trenton Zoning Board. Although disagreeing with the DRCC's requirement, because in its view the variation was de minimus, petitioner nonetheless withdrew its amendment and requested DRCC action on its original application. However, on September 28, 2000, DRCC staff asked for clarification and delineation of the landscaping plans actually relied on by petitioner in order to complete the application for submission at the DRCC meeting on October 18, 2000.

Petitioner never responded to this request, but instead on October 13, 2000, asserted that its application was "complete" on March 8, 2000, and therefore automatically approved, pursuant to the default provisions of *N.J.S.A.* 13:13A–14c and *N.J.A.C.* 7:45–2.6(f), because the DRCC failed to act within the requisite 45–day period, or for that matter by September 21, 2000, the deadline set to address the amendment. On October 18, 2000, the DRCC

---

[1] Prior to that meeting, the DRCC's staff tentatively recommended that petitioner's application, even as amended, be denied. It was staff's opinion that the location of the sign and the proposed trees would lessen the openness of the Park and cause more forceful intrusion of the nearby Route 1 highway. According to staff, 80–foot tall trees, with a grated expanded planting footprint, were required to block a view of the billboard from the Park, and therefore petitioner's landscape-screening plan would not adequately meet the DRCC's visual waiver regulation.

rejected this claim and denied petitioner's application for a visual impact waiver both with and without the cedar tree buffer, finding the proposal violated applicable regulations which preclude the construction of structures within 200 feet of the Park boundary. *N.J.A.C.* 7:45–7.4(d)3.

Pursuant to *N.J.S.A.* 52:14B–10.1 and *N.J.A.C.* 7:45–4.1, at petitioner's request, the matter was referred to the Office of Administrative Law (OAL) for an adjudicatory hearing before an Administrative Law Judge (ALJ). Following the ALJ's denial of petitioner's pre-hearing motion that the Commissioner of the New Jersey Department of Environmental Protection (DEP), rather than the DRCC, should issue the final agency determination, the case was heard and an Initial Decision was rendered by the ALJ on March 8, 2004, affirming the DRCC's initial denial of petitioner's request for a waiver from visual impact. On July 21, 2004, the DRCC adopted the ALJ's Initial Decision and issued a final decision affirming its previous denial of petitioner's application.

On appeal, petitioner argues that the DRCC is not an agency head with power to render a final decision and that, in any event, its application should have been either automatically approved for want of timely agency action, *N.J.A.C.* 7:45–2.6(f); *N.J.S.A.* 13:13A–14c, or otherwise granted because there was substantial compliance with the visual waiver requirements of *N.J.A.C.* 7:45–9.3(a). We disagree with all these contentions.

(i)

In rejecting petitioner's pre-hearing motion that the DEP Commissioner, as agency head, should issue the final agency decision in this matter, the ALJ held that "the [DRCC] alone has power to determine a review zone, and again, has exclusive power to approve, reject, or modify any project within it. *N.J.S.A.* 13:13A–14." We agree.

Pursuant to the Administrative Procedure Act (APA), "head of the agency":

means and includes the individual or group of individuals constituting the highest authority within any agency authorized or required by law to render an adjudication in a contested case. *N.J.S.A.* 52:14B–2(d).

It is clear from the Delaware and Raritan Canal State Park Law of 1974, *N.J.S.A.* 13:13A–1 to –15, read as a whole, that the DRCC's review of proposed projects within the review zone it is charged with establishing is the final administrative determination prior to judicial review of a contested case, i.e., initial permit denial.

In the first place, the DRCC is assigned the responsibility to delineate zones in which it reviews all private and public projects that may affect the Park and to insure that these projects conform as nearly as possible to its master plan. *N.J.S.A.* 13:13A–11h; *N.J.S.A.* 13:13A–14. Moreover, "project" is broadly defined to include, as here, "any structure ... for which a permit from ... the municipality is required...." *N.J.S.A.* 13:13A–14c. To this end, an initial application must be submitted first to the appropriate "municipal reviewing agency," *ibid.,* and if approved, the proposed project is reviewed by the DRCC. The DRCC's review of a project is deemed to be "final and binding on the municipality." *Ibid.* Thus, the DRCC is the final administrative authority on project review and, as such, qualifies as the agency head under the APA for contested cases such as the instant matter. *N.J.S.A.* 52:14B–2(d); *see also Matter of Kallen,* 92 *N.J.* 14, 20, 455 *A.*2d 460 (1983). Indeed, such status comports with the overall authority vested in the DRCC to develop a master plan for the Park's preservation and conservation, and to review State and local actions impacting on the Park to ensure conformity with its master plan.

The DRCC's unique partnership with the DEP in this statutory mission does not detract from its status as ultimate administrative arbiter of any project within the review zone. *N.J.S.A.* 13:13A–14c. To be sure, the DEP is authorized to promulgate rules and regulations for the use and protection of the Park, but only with the DRCC's approval. *N.J.S.A.* 13:13A–10. Moreover, the DEP Commissioner serves as an ex officio member

of the DRCC. *N.J.S.A.* 13:13A–11a(1). And, the DRCC is responsible for reviewing actions by the DEP, as well as by other State agencies, insofar as they relate to the Park. *N.J.S.A.* 13:13A–11h. In sum, we are satisfied that the DRCC, not the DEP, is the highest authority authorized to issue final decisions on projects within its review zone.[2]

### (ii)

█ We are also satisfied that the DRCC's action in denying petitioner's application was not untimely. Continuances were sought by petitioner from March through August 2000, when petitioner amended its application and restarted the 45–day clock. And later, but before expiration of the new deadline, when petitioner again changed course by withdrawing its revision and relying on the prior application, it was not unreasonable for the DRCC to assert that its time to issue a decision started anew, given its need to reassess petitioner's proposal and ascertain exactly which landscaping plans were being relied upon. Thus, on October 18, 2000, the DRCC's decision was not outside the default deadline of *N.J.A.C.* 7:45–2.6(e), and petitioner is not entitled to an automatic approval.

██ Even if the DRCC were in technical default, in our view, petitioner would not be entitled to an automatic approval of its application. It is clear that automatic approval statutes are to be "applied with caution." *King v. N.J. Racing Comm'n,* 103 *N.J.* 412, 422, 511 *A.*2d 615 (1986); *Star Enter. v. Wilder,* 268 *N.J.Super.* 371, 374, 633 *A.*2d 1001 (App.Div.1993). In the analogous

---

[2] *N.J.A.C.* 7:45–4.5, promulgated after the DRCC's final decision in this case and effective August 2, 2004, *see* 35 *N.J.R.* 5351(a); 36 *N.J.R.* 3583(a), provides that:

> [U]pon issuance by an administrative law judge of a recommended report and decision with recommended findings of fact and conclusions of law, *the Commission shall issue a final decision* within the time limits established under the APA and pursuant to the terms of the APA.
> [Emphasis added.]

context of land use cases involving the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –22, despite seemingly mandatory language, courts have denied automatic approval to development applications, especially where the failure to act within the statutory deadline was technical or inadvertent, or where there was no evidence of intentional delay or inattention to the application. *Manalapan Holding Co. v. Plan. Bd. of the Tp. of Hamilton,* 92 *N.J.* 466, 480–82, 457 *A.*2d 441 (1983), *rev'g,* 184 *N.J.Super.* 99, 445 *A.*2d 410 (App.Div.1982); *Star Enter., supra,* 268 *N.J.Super.* at 375–77, 633 *A.*2d 1001; *D'Anna v. Plan. Bd. of the Tp. of Wash.,* 256 *N.J.Super.* 78, 82–84, 606 *A.*2d 417 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992); *Allied Realty v. Borough of Upper Saddle River,* 221 *N.J.Super.* 407, 418–20, 534 *A.*2d 1019 (App.Div.1987), *certif. denied,* 110 *N.J.* 304, 540 *A.*2d 1284 (1988). "[A]pplication of the statutory time constraints must be anchored in the reason for their existence. The evil which the automatic approval provisions were designed to remedy was municipal inaction and inattention." *Allied Realty, supra,* 221 *N.J.Super.* at 418, 534 *A.*2d 1019. The purpose of these time limits is to expedite decision-making on land use applications. *Lizak v. Faria,* 96 *N.J.* 482, 492, 476 *A.*2d 1189 (1984); *accord Star Enter., supra,* 268 *N.J.Super.* at 376, 633 *A.*2d 1001; *D'Anna, supra,* 256 *N.J.Super.* at 82, 606 *A.*2d 417. Thus, we have been "reluctant to uphold an automatic approval absent a clear showing of purposeful delay." *Eastampton Ctr. v. Plan. Bd.,* 354 *N.J.Super.* 171, 194, 805 *A.*2d 456 (App.Div.2002).

Here, we discern no purposeful delay or inattention on the part of the DRCC. On the contrary, any delay was occasioned by petitioner, at first attempting negotiations for a pedestrian easement, then revising its plan, and finally, withdrawing the amendment because it failed to secure requisite municipal approvals, rendering it incomplete. Under the circumstances, we decline to apply the default provisions of *N.J.S.A.* 13:13A–14c and *N.J.A.C.* 7:45–2.6(f).

(iii)

■ Lastly, petitioner argues that its application met the governing visual impact waiver standard and should have been granted. We disagree.

The only governing regulation applicable here requires that visual screening continue to exist in the future by virtue of vegetation that screens the entire project. *N.J.A.C.* 7:45–9.7(a)1iii. The ALJ, however, credited Amon's testimony concerning the continued visibility of the billboard, namely, that the proposed landscaping plan failed to disclose height or spacing of trees, except by scale, and that

the trees, conical in shape at the top, would not provide a concealing wall ... Consequently the only element of the waiver standard having application, *N.J.A.C.* 7:45–9.7(a)1iii has not been satisfied.

Thus, the ALJ concluded:

the hearing record shows that a waiver can lawfully be withheld by the Commission, exercising its discretion in applying the standard. The believable testimony, by Mr. Amon, is that the sign will not immediately be blocked by the double row of trees. It is even less likely for that reason, that the original plan of petitioner will provide coverage of the sign either.

Indeed, even petitioner conceded that "it was not possible to make the billboard's completely invisible to the users of [ ] Park."

In adopting the ALJ's Initial Decision, the DRCC concluded:

the regulations for a visual waiver say that ... vegetation must screen the entire project within the 200 foot linear review zone. Petitioner's real claim is that it did the best it could, given its demands for height and proximity to nearby Route 1 and thus the [DRCC] should have granted the waiver. Yet, as the regulations insist, natural or artificial screening is required from the Canal Park. *N.J.A.C.* 7:45–9.7. Petitioner's options were and are to seek a hardship waiver pursuant to *N.J.A.C.* 7:45–9.3,[3] or to reduce the height of the billboard or relocate the billboard further away from the Canal Park.

■ As a general proposition, we will not upset the ultimate determination of an agency unless it is shown that the decision

---

[3] We note that petitioner did not file an application for a hardship waiver. As such, the DRCC never addressed that issue, *N.J.A.C.* 7:45–9.3, and consequently the record is devoid of any facts corroborative of petitioner's much belated claim on appeal.

was arbitrary, capricious or unreasonable, or that it violated legislative policies expressed or implied in the act that governs the agency. *Campbell v. Dep't of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). Indeed, courts have a "strong inclination to defer to agency action provided it is consistent with the legislative grant of power." *Lewis v. Catastrophic Illness in Children Relief Fund Comm'n,* 336 *N.J.Super.* 361, 370, 764 *A.*2d 1035 (App.Div.), *certif. denied,* 168 *N.J.* 290, 773 *A.*2d 1154 (2001).

We are satisfied that the DRCC's determination is supported by substantial credible evidence, is neither arbitrary nor unreasonable, and fully comports with the legislative policies expressed in the agency's enabling act.

Affirmed.