MANALAPAN HOLDING CO., INC., A NEW JERSEY CORPORA-TION, PLAINTIFF-RESPONDENT, v. PLANNING BOARD OF THE TOWNSHIP OF HAMILTON, DEFENDANT-APPELLANT.

Argued October 25, 1982—Decided March 15, 1983.

*William C. Baggitt, III,* argued the cause for appellant.

*Douglas K. Wolfson* argued the cause for respondent (*Greenbaum, Greenbaum, Rowe & Smith,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case focuses on the automatic approval provisions contained in the Municipal Land Use Law (MLUL) relating to preliminary approval of subdivision plans. The MLUL requires that a municipality act upon an application for preliminary subdivision approval within 95 days or the application will be approved automatically, *N.J.S.A.* 40:55D–48 c. At the center of this controversy is how this provision of the MLUL detailing procedures for municipal approval, *N.J.S.A.* 40:55D–48 c, interrelates with the statutory provisions requiring county approval of preliminary subdivision applications, *N.J.S.A.* 40:27–6.1 to –6.13. At issue is whether the municipality may extend the 95-day statutory period by deferring action on the application

until it receives notice of county approval under *N.J.S.A.* 40:27–6.3. Also at issue in this case is whether, under the circumstances reflected in the record of the proceedings before the municipality, the statutory 95-day period was validly extended so as to avoid the automatic approval of the preliminary subdivision application.

We now hold that a municipality must act upon a preliminary subdivision application within the 95-day statutory period and may not unilaterally extend that period by deferring its consideration of the application while awaiting county approval. We further hold that the developer in this case did not consent to an extension of the 95-day statutory period for municipal review. Nevertheless, in an exercise of our original jurisdiction, we find, in view of all the circumstances of the case relating particularly to the misapprehension of the parties concerning statutory requirements, that plaintiff's application should not be automatically approved and that it be scheduled promptly for a public hearing.

## I

The plaintiff, Manalapan Holding Company, is the owner of a 45-acre parcel in the Township of Hamilton. It sought to construct a major residential development on this land by subdividing 23.65 acres of the parcel into 67 building lots.

On June 30, 1980 the developer began the formal governmental approval process with the submission of an application for preliminary major subdivision approval to the Township of Hamilton and the Mercer County Planning Board. Under the Municipal Land Use Law (MLUL), both municipal and county approval are necessary. *N.J.S.A.* 40:55D–37; *N.J.S.A.* 40:27–6.3. However, county review of the application is limited to the effect of the subdivision on county roads and drainage facilities. *N.J.S.A.* 40:27–6.2.

The Township of Hamilton initially referred the application to its Development Review Advisory Board (DRAB) which, under

the municipal ordinance, *Hamilton Code* § 160–802(B)(1), had the duty to "[r]eview all applications for development for compliance with the applicable ordinance provisions." Consistent with its understanding of the duty, the DRAB reviewed the application for completeness. At its July 23, 1980 meeting, the DRAB heard from the Township's Planning and Engineering Departments which expressed a major concern over the sewerage of the development. The Township's counsel also informed the developer of the Township's policy that county approval was required prior to consideration of any application by the Township Planning Board. The DRAB determined that the application was complete and forwarded the application with the comments of the Planning and Engineering Departments to the Township Planning Board. These comments and recommendations specifically referred to sewer capacity and the possible necessity of a detention basin and noted further that county approval would be required.

The County completed its own review of the application and, on August 1, 1980, informed the Township and the developer that an on-site stormwater detention facility would be required. On August 5, 1980 the developer requested that the County reconsider its decision to require a detention basin.

Coincidental with the County's action upon the application, the Township's Planning Board scheduled a public hearing on the application for the evening of August 7. At the beginning of the meeting, the attorney for the developer requested that the hearing on the application be postponed until the next scheduled meeting, which was to take place in September. The request was granted.

On September 10, 1980, which was prior to the scheduled September meeting of the Township Planning Board, the County acted upon plaintiff's request for reconsideration of its requirement that a stormwater detention facility be provided. It declined to alter this requirement and affirmed its earlier decision. It approved the preliminary major subdivision application contingent upon provision of the stormwater detention facility.

The Planning Board, which had re-scheduled the public hearing on the application for its September 11, 1980 meeting, removed the item from its agenda prior to the convening of the meeting. Although the reasons for this action are not contained in the record, the Township apparently delayed the hearing in accordance with its policy to consider only applications with county approval. The county approval of plaintiff's application had apparently not been received at the time the Township Planning Board's agenda for the September 11 meeting was finalized.

Thereafter, in order to meet the requirements for a stormwater detention facility imposed by the County, plaintiff submitted a revised application to the Township and the County on October 7, 1980. The Planning Board's next regular meeting was held on October 16. However, the Planning Board did not conduct a public hearing on plaintiff's application at that meeting. Instead, at that meeting it called a special meeting for October 30 at which the public hearing on plaintiff's application would be conducted.

On October 24, 1980 the Planning Board secretary called the developer's attorney requesting that the developer consent to an extension of the 95-day statutory period within which the municipality must act on a preliminary subdivision application, failing which the application would be approved automatically. Viewing July 23 as the date on which the application was deemed complete, the 95-day period would expire on October 26, four days before the scheduled October 30 public hearing. The developer did not grant the extension or attend the October 30 hearing. Rather, in a letter that was hand-delivered to the Planning Board on the afternoon of October 30, it claimed that the statutory 95-day period expired and that the Planning Board would be deemed to have granted preliminary approval of its application in accord with the automatic approval provisions of *N.J.S.A.* 40:55D–48 c.

The Planning Board responded at the October 30 meeting by adopting a resolution providing that the Board has not received "sufficient information upon which it can make a reasonable judgment" and that "no plans for final approval will be accepted unless and until ... [the developers] submit themselves to a public hearing for preliminary approval." In a letter to the plaintiff's counsel dated November 6, 1980, Township counsel stated the Board's position and suggested that plaintiff commence an action in Superior Court, unless it was willing to submit to the public hearing. Plaintiff filed a complaint on December 3, 1980 in the Superior Court, Chancery Division, seeking both a declaratory judgment that it was statutorily entitled to preliminary major subdivision approval and damages under 42 *U.S.C.* § 1983. The action was then transferred to the Law Division.

The court denied plaintiff's motion for partial summary judgment seeking the declaratory judgment and dismissed the complaint in its entirety, holding that "it is not clear that the application was completed...." Twenty days later, plaintiff filed a motion requesting reconsideration of the motion for summary judgment. The court again heard argument and reversed its earlier judgment. In granting plaintiff's motion for partial summary judgment, the court relied on *N.J.S.A.* 40:55D–48 a, which requires the Board to notify the developer in writing of any deficiencies in an application within 45 days of its submission or the application will be deemed to be complete. Since no such written notice was ever given, the court found that the application must have been deemed complete as a matter of law no later than August 14, 1980. Accordingly, the court held that the application was automatically approved because the 95-day period for municipal action expired no later than November 17, by which time the application had been neither granted nor denied as required by *N.J.S.A.* 40:55D–48 c.

The defendant filed its own motion for reconsideration with the trial court. In denying the motion, the court rejected defendant's arguments that the application was never deemed

complete and that *N.J.S.A.* 40:27–6.3, which deals with the relationship between municipal action and county approval, permits the Township Planning Board to defer action until the County has acted.

The Board appealed to the Appellate Division, which upheld the trial court in a split decision. 184 *N.J.Super.* 99. The majority found that the application was deemed complete at the July 23 DRAB meeting and that the 95-day statutory period, which had not been extended, had expired on October 26, 1980. The court further held that under the terms of *N.J.S.A.* 40:55D–48 c the Planning Board could not defer its consideration of the application until the County acted. It found that *N.J.S.A.* 40:27–6.3, which contained a deferral option in terms of county approval, was partially repealed by the subsequent enactment of *N.J.S.A.* 40:55D–48 c.

A dissenting opinion construed plaintiff's acts at the August Planning Board meeting as a request that the statutory period be extended. It then found that the timely actions of the Board at the October 30 special meeting constituted a decision to defer action until county approval was granted and the plaintiff submitted to a public hearing, a decision permitted under his reading of *N.J.S.A.* 40:27–6.3. The dissent rejected the notion that this statutory provision had been impliedly repealed by *N.J.S.A.* 40:55D–48 c.

Defendant's appeal is here as of right. *R.* 2:2–1(a)(2).

## II

The Municipal Land Use Law establishes the process governing the approval of a preliminary application for a subdivision. In order to insure prompt municipal review of subdivision applications, the Legislature required that local planning boards grant or deny preliminary approval to a major subdivision of more than 10 lots within 95 days of the submission of a

completed application. *N.J.S.A.* 40:55D–48 c.[1] Unless the developer has consented to an extension, a failure to act within the statutory time limit constitutes preliminary approval of the subdivision plan. *Id.*

The statutory scheme regarding subdivision approval also calls for county action. County review of the subdivision application, however, is limited to the effect of the proposed developments on county roads and drainage facilities. *N.J.S.A.* 40:27–6.3. The municipal approval process and county review of the subdivision plan are parallel, occurring at the same time. The county

---

[1]*N.J.S.A.* 40:55D–48 c provides:

Upon the submission to the administrative officer of a complete application for a subdivision of 10 or fewer lots, the planning board shall grant or deny preliminary approval within 45 days of the date of such submission or within such further time as may be consented to by the developer. Upon the submission of a complete application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision.

A completed application must include an application form executed as specified by ordinance and the rules and regulations of the municipal agency and all accompanying documents required by municipal ordinance. *N.J.S.A.* 40:55D–3. Municipalities must certify an application as complete upon meeting these requirements. *Id.* If the application is found to be incomplete, the municipality must provide written notice to the developer of the deficiencies in the application within 45 days of its submission or the application will be deemed to be properly submitted. *N.J.S.A.* 40:55D–48 a. A municipality may require that a developer submit additional information and revisions in underlying documents that are reasonably necessary to make an informed decision although not specified in the ordinance. *N.J. S.A.* 40:55D–3. An application will not be deemed incomplete for failure to submit this additional information or these revisions. *Id.*

Defendant continues to assert that plaintiff's application was not complete until a supplement to the application was submitted on October 7, 1980. This issue is not properly before the Court since both the majority opinion of the Appellate Division, 184 *N.J.Super.* at 109–10, and the dissenting opinion, 184 *N.J.Super.* at 112–13, concluded that the application was complete as of July 23, 1980, the date upon which the DRAB deemed the application to be complete. *See R.* 2:2–1(a)(2) (appeal as of right limited to

planning board must report to the municipality within 30 days of its receipt of the application. If the county fails to report within the statutory time period, the application is deemed to have received county approval, unless a 30-day extension is agreed upon by the county, the municipality and the applicant.[2] *Id.*

The narrow issue of statutory interpretation critical in the resolution of this case concerns the effect of the county approval process on the time constraints for municipal action contained in the MLUL. Both the statutory provisions establishing the county review process and the MLUL governing municipal action address this requirement. The relevant portion of the statute regarding county subdivision approval states:

> Each subdivision application shall be submitted to the county planning board for review and, where required, approval prior to approval by the local municipal approving authority. County approval of any subdivision application affecting county road or drainage facilities shall be limited by and based upon the rules, regulations and standards established by and duly set forth in a resolution adopted by the board of chosen freeholders. The municipal approval authority shall either defer taking final action on a subdivision application until receipt of the county planning board report thereon or approve the subdivision application subject to its timely receipt of a favorable report thereon by the county planning board. The county planning board shall report to the municipal authority within 30 days from the date of receipt of the application. If the county planning board fails to report to the municipal approving authority within the 30-day period, said subdivision application shall be deemed to have been approved by the county planning board unless, by mutual agreement between the county planning board and municipal approving authority, with approval of the applicant, the 30-day period shall be extended for an additional 30-day period, and any such extension shall so extend the time within which a municipal approving authority shall be required by law to act thereon. [*N.J.S.A.* 40:27–6.3]

The relevant section of the MLUL, *N.J.S.A.* 40:55D–37 c, reads:

> Each application for subdivision approval, where required pursuant to section 5 of P.L.1968, c. 285 (C. 40:27–6.3), and each application for site plan approval, where required pursuant to section 8 of P.L.1968, c. 285 (C. 40:27–6.6) shall be

---

issues of dissent below). This date must therefore be considered as the commencement of the time period for municipal action in this case.

[2]This 30-day extension for county approval also extends the period for municipal approval by 30 days. *N.J.S.A.* 40:27–6.3.

submitted by the applicant to the county planning board for review or approval, as required by the aforesaid sections, and the municipal planning board shall condition any approval that it grants upon timely receipt of a favorable report on the application by the county planning board or approval by the county planning board by its failure to report thereon within the required time period.

The majority of the Appellate Division concluded that the MLUL, *N.J.S.A.* 40:55D–37 c, dealing with municipal planning board approval of subdivision applications, impliedly repealed the deferral option over such approvals contained in *N.J.S.A.* 40:27–6.3. It based that conclusion on the asserted inconsistency between the provisions calling for expeditious and automatic approvals of the MLUL and the possible delays inherent in the county scheme. It stated:

> It is evident that the statutory approval mechanisms of the Municipal Land Use Act were intended to preclude the practices to which municipalities theretofore resorted to endlessly protract final determination of land development applications with the consequent result of undue harassment of developers and substantial economic prejudice to their legitimate development plans. The automatic statutory approval was, therefore, designed to encourage prompt consideration and disposition of applications for the advancement of the interests of both the developers and the public. *See, generally, Levin v. Parsippany-Troy Hills Tp.,* 82 *N.J.* 174, 179 (1980). *And see Lizak v. Faria,* 180 *N.J.Super.* 248 (Ch.Div.1981); *Burcam Corp. v. Medford Tp. Planning Bd.,* 160 *N.J.Super.* 258 (Law Div.1978), aff'd as modified 168 *N.J.Super.* 508 (App.Div.1979). It is in view of this essential purpose that the complex of land use statutes must be construed. In our view, it would abrogate the intention of the automatic approval provisions of the statutes which explicitly require the municipal agency to take action within a prescribed time if they were construed to permit the municipal agency unilaterally to extend the statutory time period by deferring action. [184 *N.J.Super.* at 108]

Under this interpretation, a municipality could conditionally approve an application pending a favorable county review or deny the application, but it could not defer action to await county approval and thereby unilaterally extend the 95-day statutory period.

The dissenting judge rejected the majority's interpretation that the deferral option contained within *N.J.S.A.* 40:27–6.3 was impliedly repealed. The dissent regarded the multiple cross-references to *N.J.S.A.* 40:27–6.3 in the MLUL as an indication that the legislature was aware of the provision and did not intend its repeal. The dissenter reasoned that implied repeal of the defer-

ral option was contrary to the first purpose of the MLUL, *N.J.S.A.* 40:55D–2 a (to encourage municipal action in a manner that will promote the public health, safety, morals, and general welfare), because it would prematurely force municipalities to deny applications and in this case would grant approval to an essentially unscrutinized development. Under the dissent's reading of the two statutes, *N.J.S.A.* 40:55D–37 c, which provides that a municipality's approval of an application must be conditioned on receipt of a favorable report from the county, is pertinent only when the municipal planning board chooses to approve, rather than defer or deny an application.

Each of these interpretations is flawed. We conclude that the MLUL does not impliedly repeal the deferral option in *N.J.S.A.* 40:27–6.3 because we find no conflict between the two statutes. *N.J.S.A.* 40:27–6.3 permits a municipality to "defer taking *final* action on a subdivision application *until* receipt of the county planning board report . . . ." (emphasis added). The provision grants the municipality the option of deferring final action until the county has acted, a period that the statute limits to no more than 30 days. During this period before the filing of the county report, the municipality is not prevented from considering the application, scheduling public hearings, and the like. Under this option, the municipality simply may "defer taking final action." *Id.* However, if the municipality determines to take final action within this 30-day period, it must do so under provisions of the second option contained in *N.J.S.A.* 40:27–6.3. This limits its final action to the approval of the application contingent upon receipt of a favorable report from the county. This interpretation is entirely consistent with the requirement of *N.J.S.A.* 40:55D–37 c, which mandates that municipal approval of a subdivision application be conditioned upon a favorable review by the county.

The statutes thus construed clearly require municipal action upon an application within 95 days of the determination that the application is complete, unless the applicant consents to an extension. A municipality cannot unilaterally extend the period

within which it must consider a subdivision application. As the MLUL plainly spells out, "the planning board shall grant or deny preliminary approval within 95 days of the date of [the] submission [of a completed application] or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision." *N.J.S.A.* 40:55D–48 c.

■ In sum, we conclude that a municipality's decision to defer action while awaiting county approval cannot serve unilaterally to extend the 95-day statutory period for municipal action. During the 30-day period designated for county approval, the municipality may either consider the application while deferring final action until receipt of the county report or grant approval of the application subject to a favorable county report. A municipality's exercise of the deferral option, however, will not lengthen the 95-day period unless the consent of the developer is obtained.

## III

The further issue raised by this appeal is whether the developer's request for a postponement of the public hearing at the August 7, 1980 meeting of the Township Planning Board constituted an extension of the statutory time period for municipal action.[3] We are satisfied that the evidence amply supports the determination of the majority of the Appellate Division that an extension of the statutory time limit was not within the contemplation of either party at the meeting. A fair reading of the transcript of the proceedings of the August 7 meeting

---

[3]The significance of this postponement is an issue that divided the Appellate Division. *See* 184 *N.J.Super.* at 109 (majority opinion) (postponement due to the press of business and time constraints); *id.* at 113–14 (dissenting opinion) (postponement sought by plaintiff because of a "problem we are trying to work out with the County Planning Board").

supports the conclusion that basically all that was requested by the applicant, granted by the defendant and acquiesced in by interested members of the general public was a postponement of the public hearing to another scheduled meeting.[4] The fact that the postponement may have benefitted the developer by providing a further opportunity to resolve its problems with the County is simply insufficient to support an inference that the

---

[4]At the beginning of the Planning Board's August meeting, plaintiff's attorney suggested that the public hearing on the subdivision application be "put ... off until whenever [the] next meeting [of the Planning Board] is." Plaintiff's attorney stated,

> Mr. Chairman, my name is Peter Reinhart, I'm the attorney for the one you just mentioned—Manalapan Holding Company and I know we're number 16. We would have no problem with consenting to an extension of time on that one to another meeting, we have a problem we are trying to work out with the County·Planning Board and I think it would be in the interest of this Board as well as interest of time if we can put that off until whenever your next meeting is.

Township counsel responded to the request by reminding plaintiff that public notice of the new public hearing date would have to be given. Township counsel summarized the developer's request as follows:

> I think the Chairman's point, if you will, and the lawyer's point is, that it is number 16 on the agenda and we have a crowded agenda, there's 30 some items on it. What he's saying is that he is willing to withdraw tonight and you get preference on the next agenda at the next regular meeting, if not your [*sic*] free to wait around. You know, it sort of to try to accommodate everyone, including the public. It's really up to you and I think it's a good gesture. The point is, that you will be given personal notice to all property owners within 200 feet and the notice will be published in the paper again of the next meeting. But, it's up to the Chairman, it's his prerogative.

Residents of the neighborhood then indicated that a delay in the hearing would permit them more time to organize a civic association. The motion that "this [application] be held over until the September meeting as per request of applicant" passed unanimously. The chairman then addressed the audience.

> So anyone interested in that Manalapan Holding Corporation—Miry Brook and Shawnee Road at the applicant's request—it has been postponed until the regular meeting in September[;] proper newspaper notices and proper notices to all homeowners within the area will be given, and I think it's to everybody's benefit because judging from past experience on this Board I don't think we would have reached that point at 11:30. I really really don't think so.

plaintiff consented to an extension of the overall time period for final municipal action.

## IV

■ The Appellate Division understandably concluded, upon this interpretation of the official action taken at the August 7 planning board meeting, that the 95-day statutory period within which there must be final municipal action upon the subdivision application had not been validly extended in accordance with the statute. Consequently, it ruled that final action—automatic approval—occurred upon the expiration of the unextended 95-day period, namely, on October 24, 1980.

Although this reasoning and ruling reflect a careful tracking and literal application of the statute, this case presents special circumstances that warrant a different result. The record indicates that the municipal officials misperceived the effect of the MLUL upon their former practice of securing county approval prior to acting upon a preliminary subdivision application. The Township's reliance upon its understanding of the law was clearly genuine and not unwarranted as indicated by the fact that this issue is one that split the Appellate Division judges. If the municipality had fully realized that such a practice was no longer possible under the MLUL, it might well have endeavored to secure an extension of the statutory 95-day period in August when it merely permitted a postponement of the scheduled hearing.

Similarly, it seems evident that had the municipality fully realized that only an extension, rather than a simple postponement, of the September public hearing would suffice under the statute to preserve the public's interest in and the municipality's right to hold a public hearing, such an extension could undoubtedly have been secured at that time or, alternatively, a public hearing held. Again, if the Township had fully recognized that the application would be approved automatically on October 26, the Planning Board at its October 16 meeting would have

sought an extension of the statutory time limit or scheduled a public hearing before its expiration on October 26.

This misapprehension regarding the tolling of the statutory period was apparently shared by the applicant which was anxious to resolve its differences with the County and secure its approval prior to favorable municipal action. There is nothing to suggest the applicant would not readily have agreed to an extension in August since all participants expected that the action originally anticipated at the August meeting would take place at the next meeting in September. Additionally, the applicant, as noted, requested that the County reconsider its requirement of a drainage retention basin. To permit such reconsideration, the applicant undoubtedly would have consented to a 30-day extension of the statutory time period for county approval, which, in turn, would have extended the municipal approval period by the same amount of time.

While there is no suggestion of bad faith, sharp practice or overreaching on the part of the developer in seeking to take advantage of the automatic approval, there is, also, no suggestion of bad faith, prevarication or obstructionism by the municipality in granting postponements when it did. The course of events created by both parties bespeaks inadvertence, ignorance or misunderstanding as to the operation and mechanics of the statute in triggering the extension period and preserving the opportunity for a public hearing on a preliminary subdivision application. To the extent that our perception of the record is predicated upon facts either not found or not considered legally significant by the courts below, we exercise our original jurisdiction under *R.* 2:10–5, and make such findings based upon the totality of the evidence. We do so because we are satisfied that under all the circumstances, the appropriate disposition of this appeal is to require that the public hearing on plaintiff's application for preliminary subdivision approval be held forthwith by the Township Planning Board. Following the public hearing,

the municipality must act in good faith upon the plaintiff's preliminary subdivision application within two weeks or it will be deemed approved. This course better serves the public interest and does not treat the applicant unfairly.[5] The holding of a public hearing also reasonably meets the MLUL's statutory ends since the municipality here did not engage in untoward delaying tactics, simply to frustrate or forestall the applicant, an evil which the statute was specifically designed to overcome.

We hasten to add that by this result we do not countenance a permissive interpretation or application of the statute. The statute prescribes strict timetables and a careful methodology. It does not imply waiver or relaxation of its terms. This opinion now clarifies and makes explicit the requirements of the statute with respect to the manner and time within which a municipality must act upon an application for preliminary subdivision approval. Consequently, we do not anticipate that in the future, even under a similar pattern of conduct, would a public hearing upon a preliminary subdivision application still remain available once the statutory periods for municipal action had expired without a clear valid extension.

Accordingly, the judgment below is reversed and the case remanded.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For affirmance*—None.

---

[5] It is clear that the municipality consistently sought and anticipated the holding of a public hearing. Its plan to have such a hearing and the reasons that underlay the need for such a hearing—the public's strong concern over drainage—were well known to the developer. The plaintiff had no contrary expectation.