624 A.2d 587

IN THE MATTER OF DISAPPROVAL OF COMMERCIAL INSUR-
ANCE POLICY FORMS OF INSURANCE COMPANY OF NORTH
AMERICA, INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA, CIGNA INSURANCE COMPANY, PACIFIC EM-
PLOYERS INSURANCE COMPANY, CIGNA PROPERTY & CA-
SUALTY INSURANCE COMPANY, CENTURY INDEMNITY IN-
SURANCE COMPANY, CIGNA FIRE UNDERWRITERS INSUR-
ANCE COMPANY, BANKERS STANDARD INSURANCE COM-
PANY, ATLANTIC EMPLOYERS INSURANCE COMPANY.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1993—Decided April 29, 1993.

Before Judges MICHELS, BILDER and BAIME.

*Michael R. Cole* argued the cause for appellants Insurance Company of North America, et al. (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Mr. Cole,* of counsel; *Jeanne M. Bratsafolis* and *Barbara Laczynski,* on the brief).

*Andrea R. Grundfest,* Deputy Attorney General, argued the cause for respondent *Samuel F. Fortunato,* Commissioner of the New Jersey Department of Insurance (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Grundfest* and *Jacqueline Dileo,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Petitioners, Insurance Company of North America, Indemnity Insurance Company of North America, CIGNA Insurance Company, Pacific Employers Insurance Company, CIGNA Property & Casualty Insurance Company, Century Indemnity Insurance Company, CIGNA Fire Underwriters Insurance Company, Bankers Standard Insurance Company and Atlantic Employers Insurance Company (hereinafter collectively referred to as CIGNA), appeal from the final administrative action of respondent Samuel F. Fortunato, the Commissioner of the New Jersey Department of Insurance (Commissioner), which disapproved their proposed Absolute Pollution Exclusion endorsement [Form LD–6608 (7/91) ].

On September 13, 1991, CIGNA filed with the Department of Insurance (Department) a proposed endorsement which sought to add a pollution exclusion to their commercial multi-peril, general liability, farm liability and professional liability insurance pro-

grams written on and after November 15, 1991. The purpose of the proposed Absolute Pollution Exclusion was to make clear that these liability insurance policies were not to include coverage for losses resulting in any way from pollution. The Absolute Pollution Exclusion endorsement provided:

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

This endorsement replaces any pollution exclusion and amends all insurance provided under the following:

COMMERCIAL GENERAL LIABILITY FORM; FARM COVERAGE FORM; OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM; PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM; RAILROAD PROTECTIVE LIABILITY COVERAGE FORM.

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused. Pollution includes the actual or alleged presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

In accordance with Department regulations, as set forth in the New Jersey Administrative Code, CIGNA's filing included an "Actuarial Services—Property/Liability PP–1 Form," a "Commercial Lines Insurance—General Questionnaire" and a "Commercial Lines Insurance—Policy Approval Questionnaire." While these forms were all properly included with the filing, they were largely devoid of any additional information beyond that which was contained within the actual filing itself.

Of the limited information that was provided, CIGNA classified its filing as "new," as opposed to being a "revision." Further, CIGNA declared that the filing would have "no" impact on rates to

be charged or losses to be paid, and it stated that the anticipated overall impact of the filing would be "indeterminable." Many of the other requests for information on the forms were left unanswered by CIGNA. There were no explanatory statements or supporting statistics proffered by CIGNA in connection with this filing.

In response to this filing, the Department directed a letter to CIGNA, dated September 24, 1991, which indicated that:

In order for the review of this filing to continue, the following questions/concerns must be addressed:

(1) All reference to Farm Liability insurance must be deleted from this submission. Farm Liability is a Personal Lines Coverage [and] any changes must be submitted pursuant to the Personal Lines Regulations.

(2) The Department feels that the proposed exclusion is too broad. The pollution definition is too vague and may not be in compliance with *N.J.S.A.* 17:29AA–11. The Department does not permit the use of Asbestos Exclusions and the proposed endorsement could effectively exclude all losses due to Asbestos.

(3) Justification as to why you need a pollution exclusion more restrictive than ISO's must be provided. Do you have specific loss information to substantiate the need for this endorsement?

A written response to this letter must be received by the Department by October 21, 1991, in order for us to continue our review. Unless a response is received within this time frame, we will not have sufficient data/information to review the filing. The filing will be recommended for disapproval.

Thereafter, CIGNA responded in writing to the Commissioner on October 9, 1991. It addressed the Commissioner's concerns in the following manner:

In reply to your letter of September 24, 1991, we offer the following:

1. Please delete all reference to Farm Liability insurance from our submission. We will amend the "Absolute Pollution Exclusion—New Jersey" (LD–6608) to delete reference to the Farm Coverage Form and send you a revised LD–6608 for your records after the other issues have been resolved.

2. The Insurance Services Office's "Total Pollution Exclusion" (CG 2149) was filed and approved for use in New Jersey. The ISO exclusion applies to "Bodily Injury" or "Property Damage" arising out of *pollutants*.

We have elected to develop an independent exclusion because we wish to address the issue differently than ISO.

The major differences between the proposed endorsement and the ISO Total Pollution Exclusion are summarized below:

A. The ISO exclusion applies to "bodily injury" or "property damage". The CIGNA exclusion also applies to "bodily injury" and "property damage", which are by far the major potential sources of claim activity. In addition the

CIGNA proposed exclusion also applies to all coverages under the policy. The effect of this is that the proposed exclusion applies to Personal Injury (i.e. Libel, Slander, etc.) as well as "bodily injury" and "property damage" in order to deal with an emerging litigation trend. From this perspective the proposed endorsement and the ISO exclusion are clearly very similar.

B. The ISO form eliminates all coverage for injury caused by "pollutants." The proposed endorsement applies to "pollution" claims rather than all claims caused by a pollutant. It is our belief that excluding "pollution" more clearly expresses our underwriting intent. For example, we believe the ISO Total Pollution Exclusion could be interpreted to exclude a bodily injury claim caused by a student spilling a beaker of acid on another student's arm in a chemistry lab because the claim arose out of a "pollutant". Clearly, it is not our intent to exclude this type of claim and the proposed exclusion would not apply in this example because this event would not be considered pollution. In this case, the proposed exclusion provides more coverage that the approved ISO Total Pollution Exclusion.

3. With respect to your comments concerning asbestos, the ISO Total Pollution Exclusion does not specifically mention asbestos nor does the proposed exclusion. The proposed exclusion and the ISO Total Pollution Exclusion have the same affect with respect to asbestos.

4. The companies shown above have incurred aggregate pollution liability claims of $320 million dollars in all states. While we do not have any specific information readily available for New Jersey, you can easily see that pollution liability claims have had a significant impact on our financial results.

In conclusion, we believe the proposed endorsement more clearly expresses its underwriting intent and request your approval to use it in New Jersey.

Subsequently, on November 14, 1991, the Department notified CIGNA that its filing had been disapproved. This letter announced that:

Commissioner Samuel F. Fortunato has *DISAPPROVED* the captioned filing. The reason for disapproval is based on the following:

The proposed Absolute Pollution exclusion is broader than ISO's in that it applies to all coverages under the policy including personal injury coverages. ISO's applies to Bodily Injury and Property Damage only. The ISO form excludes coverage for pollutants and defines specifically what is considered a pollutant. Proposed form excludes coverage for all pollution claims. This is an open ended exclusion in that it could exclude coverage for Asbestos which is not permitted by the Department. The proposed form is misleading and contrary to *N.J.S.A.* 17:29AA–11.

On November 21, 1991, CIGNA requested a hearing in order to present evidence in support of its proposed exclusion, and in opposition to the Commissioner's disapproval. This letter declared that:

We are in receipt of your letter dated November 14, 1991, disapproving the above-captioned file. Please accept this letter as our request for a hearing in this matter. We are requesting a hearing because we disagree with the Department's reasons for disapproval.

First, we are unaware of any requirement that all insurers use policy forms which are identical to those adopted by ISO. Whether our form is more or less restrictive than ISO's is irrelevant, and any such difference does not provide a basis for the disapproval of our form.

Additionally, we disagree that the proposed form is misleading or otherwise contrary to *N.J.S.A.* 17:29AA–11. To the contrary, we believe that the form is clear, unambiguous, fair and equitable. Further, this endorsement is not contrary to any New Jersey law. We also believe that the Department's refusal to approve endorsements which exclude coverage for asbestos is not supported under New Jersey insurance laws.

For these reasons, we hereby request a hearing and request that same be scheduled as expeditiously as possible.

The Commissioner failed to grant CIGNA's request for a hearing, and, shortly thereafter, on December 30, 1991, CIGNA appealed.

CIGNA seeks a reversal of the Commissioner's disapproval of its proposed Absolute Pollution Exclusion endorsement, and a remand of the matter with a direction that the Commissioner issue an approval of the policy form or, alternatively, that he conduct an evidentiary hearing. CIGNA contends, among other things, that the Commissioner's disapproval of its proposed endorsement actually represented an impermissible policy decision which sought to prohibit any exclusions for asbestos whatsoever. CIGNA points to the Commissioner's letter of November 14, 1991 in which he specifically emphasized, in disapproving the proposed endorsement, that:

Proposed form excludes coverage for all pollution claims. This is an open ended exclusion in that it could exclude coverage for Asbestos which is not permitted by the Department. The proposed form is misleading and contrary to *N.J.S.A.* 17:29AA–11.

CIGNA argues that reliance upon such a policy in order to prohibit its proposed exclusion was erroneous because the Commissioner, in effect, adopted a rule regarding the general validity of asbestos exclusions without notice to the industry and without compliance with the procedures set forth in the New Jersey Administrative Procedure Act, *N.J.S.A.* 52:14B–1, *et seq.* Conse-

quently, CIGNA maintains that the Commissioner's disapproval of the policy exclusion was invalid, and of no force and effect. We agree and reverse.

With regard to rulemaking, *N.J.S.A.* 52:14B–2(e) defines a "rule," in the administrative context, as follows:

"Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.

Without question, an administrative agency can make law or exercise its powers through either rulemaking or case by case adjudication. *In re Kallen,* 92 *N.J.* 14, 20–21, 455 *A.*2d 460 (1983); *Matter of Scioscia,* 216 *N.J.Super.* 644, 658, 524 *A.*2d 855 (App.Div.), *certif. denied,* 107 *N.J.* 652, 527 *A.*2d 471 (1987). However, the discretion in an agency to choose between rulemaking and adjudication does have limits. *Crema v. New Jersey Dept. of Environmental Protection,* 94 *N.J.* 286, 299, 463 *A.*2d 910 (1983). "When [an] agency is concerned with 'broad policy issues' that affect the public-at-large or an entire field of endeavor or important areas of social concern, or the contemplated action is intended to have wide application and prospective effect, rulemaking becomes the suitable mode of proceeding." *Ibid.* Clearly, when rulemaking is implicated, there are certain procedures which must be followed. *See N.J.S.A.* 52:14B–4.

The pivotal issue presented here is whether the Commissioner's pronouncement that asbestos exclusions are not permitted by the Department and, in effect, are contrary to New Jersey law, constituted improper rulemaking, since the rulemaking procedures set forth in *N.J.S.A.* 52:14B–4 were not followed. The controlling case in this area is *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984). *Metromedia* instructs that a critical aspect of determining whether agency action constitutes an administrative rule or an administrative adjudication is the " 'general applicability and continuing effect' of the pronouncement." 97

*N.J.* at 328, 478 *A*.2d 742. Furthermore, our Supreme Court declared that "the widespread, continuing, and prospective effect of an agency pronouncement is the hallmark of an 'administrative rule.'" *Id.* at 329, 478 *A*.2d 742.

Against this backdrop, the *Metromedia* Court set forth a list of the most relevant features of administrative rules, and declared that when many or most of them were present, rulemaking was in order. *Id.* at 331, 478 *A*.2d 742. Specifically, the Court noted that a conclusion that agency action constitutes an administrative rule is merited when that action:

(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. [97 *N.J.* at 331–32, 478 *A*.2d 742].

The Court subsequently instructed that "[a]ll six of the *Metromedia* factors need not be present to characterize agency action as rulemaking, and the factors should not be merely tabulated, but weighed." *In re Solid Waste Util. Cust. Lists,* 106 *N.J.* 508, 518, 524 *A*.2d 386 (1987).

Under these governing standards, there can be little question that the Commissioner's pronouncement regarding asbestos exclusions amounted to rulemaking. Virtually all of the *Metromedia* factors are implicated. Initially, it seems clear that this prohibition of asbestos exclusions in commercial lines insurance policies was intended to encompass a large segment, if not all, of the regulated group. While the Commissioner maintains that this proposition was limited to the policy form before him, this simply is not the case. The Commissioner relied upon this same policy position in requesting CIGNA to withdraw its filing of a proposed

Asbestos Exclusion endorsement in a separate matter.[1] Thus, the Commissioner's stated policy is clearly one of general applicability, and it is in no way limited solely to the situation presented here. Moreover, this position by the Commissioner is prospective in nature. It does not look back, and, in fact, it breaks new ground. Specifically, this position by the Commissioner reflects an administrative policy that has not previously been expressed in any official and explicit agency determination, adjudication or rule. While the Commissioner had previously proposed a rule to this effect, it was never adopted. *See* 21 *N.J.R.* 3057, 3060 (October 2, 1989). At oral argument, we were informed that the Commissioner has recently reproposed such a rule. *See* Reproposed New Rule: *N.J.A.C.* 11:13–7.4, and Proposed Recodification and Amendment: *N.J.A.C.* 11:13–7.4 as *N.J.A.C.* 11:13–7.5; 25 *N.J.R.* 1053, 1053–54 (March 15, 1993).[2] However, the fact remains that at the time of

[1] *See* our unpublished opinion, filed today, in *In the Matter of Disapproval of Commercial Insurance Policy Forms of Insurance Company of North America, et al.* (A–2903-91T1).

[2] The full text of the reproposed new rule, *N.J.A.C.* 11:13–7.4, and the recodification and amendment of *N.J.A.C.* 11:13–7.4 as *N.J.A.C.* 11:13–7.5, appears in the New Jersey Register dated March 15, 1993, and reads as follows:

Full text of the proposal follows (additions indicated in boldface thus; deletions indicated in brackets [thus]):

11:13–7.4 Exclusions from coverage

(a) No commercial or property liability insurance policy shall be issued or renewed on a form required to be filed pursuant to N.J.S.A. 17:29AA–6 which contains provisions excluding coverage for any injury caused in whole or in part, either directly or indirectly, by:

1. Asbestos, or arising out of or incidental to the inhalation, use, handling, or contact with asbestos; or

2. Lead paint or lead contamination, or arising out of or incidental to the inhalation, ingestion, use, handling, or contact with lead paint or lead contamination.

(b) In the event that any policy form includes exclusions or restrictions of coverage as set forth in (a) above, the forms shall also contain provisions, which may be in the form of a mandatory endorsement, so as to incorporate these standards into the terms of each policy.

11:13–[7.4]7.5 Refiling policy forms

the Commissioner's disapproval of CIGNA's proposed form, no such rule existed. Therefore, the Commissioner relied strictly on his own yet to be expressed policy that "[a]sbestos [exclusions are] not permitted by the Department" in order to disapprove CIGNA's proposed Absolute Pollution Exclusion endorsement. Certainly, in order to arrive at a decision of such momentous public importance, formal rulemaking procedures should have been instituted. Since they were not, the "rule" which was handed down here is invalid. *N.J.S.A.* 52:14B–4(d).

Nevertheless, the Commissioner's failure to properly promulgate this "rule" does not entitle CIGNA to the drastic relief that it seeks; namely, automatic approval of the proposed Absolute Pollution Exclusion endorsement pursuant to the "deemed approved" language in *N.J.S.A.* 17:29AA–6. Clearly, our courts are not obligated to apply automatic approval provisions within statutes in a mechanical fashion. *See Manalapan Holding Co. v. Hamilton Tp. Plan. Bd.*, 92 *N.J.* 466, 480–82, 457 *A.*2d 441 (1983); *Allied Realty v. Upper Saddle River*, 221 *N.J.Super.* 407, 418, 534 *A.*2d 1019 (App.Div.1987), *certif. denied*, 110 *N.J.* 304, 540 *A.*2d 1284 (1988). In fact, they will not hesitate to recognize "special circumstances that warrant a different result" when they are present. *Manalapan Holding Co., supra*, 92 *N.J.* at 480, 457 *A.*2d 441. Thus, where application of an automatic approval mechanism would prove to be "patently subversive to the public interest," it should not be applied. *Allied Realty, supra*, 221 *N.J.Super.* at 418, 534 *A.*2d 1019. This is such a case.

---

(a) Insurers with policy forms containing provisions inconsistent with the standards set forth in this subchapter shall amend those forms and refile then in accordance with N.J.S.A. 17:29AA–6 [by February 1, 1992.] as follows:

1. For N.J.A.C. 11:13–7.3, by February 1, 1992; and

2. For N.J.A.C. 11:13–7.4, by (180 days from the effective date of this amendment) and the forms shall be effective no later than (240 days from the effective date of this amendment).

(b)–(c) (No change.)

■ Additionally, there has been no bad faith, inexcusable negligence or gross indifference on the part of the Commissioner in this case which would serve to justify the application of the automatic approval mechanism. *See King v. New Jersey Racing Com'n,* 103 *N.J.* 412, 421, 511 *A.*2d 615 (1986). Under such circumstances, our Supreme Court has noted that:

> We must be mindful of the consequences flowing from a rigid and inflexible application of the deemed-approved provision of [a statute]. We do not believe that the Legislature intended such an application when this would serve only to frustrate [an agency's] regulatory responsibility without any compensatory benefit in terms of overcoming any serious agency derelictions. [*Id.* at 423–24, 511 *A.*2d 615].

Consequently, automatic approval of CIGNA's proposed Absolute Pollution Exclusion, even in light of the Commissioner's improper rulemaking, is not appropriate here. The reasons for this are quite apparent. Specifically, this matter greatly affects the public interest, and to date in these proceedings the input of interested parties, CIGNA included, has been minimal. Also, as noted above, the Commissioner in no way acted in bad faith in denying CIGNA's proposal. Beyond this, application of the "deemed approved" provision of *N.J.S.A.* 17:29AA–6 in this case would clearly serve to frustrate the Commissioner's regulatory responsibility, as it is obvious that he was simply seeking to foster uniformity in the law until such time as a formal rule prohibiting the inclusion of asbestos exclusions in commercial lines policies could be properly adopted.

In view of these circumstances, as well as the fact that the rulemaking process established by the Administrative Procedure Act has been commenced by the Commissioner during the pendency of this appeal, we decline to grant the automatic approval of CIGNA's proposed Absolute Pollution Exclusion endorsement. Instead, we vacate the Commissioner's disapproval of the endorsement based on his improper rulemaking, and direct that the Commissioner promptly complete the formal rulemaking procedures with respect to the reproposed new rule, *N.J.A.C.* 11:13–7.4,

and the proposed recodification and amendment of *N.J.A.C.* 11:13–7.4 as *N.J.A.C.* 11:13–7.5.[3]

Accordingly, the final administrative action of the Commissioner under review is reversed, and the matter is remanded to the Commissioner for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.

---

[3] While we do direct that the Commissioner act promptly with respect to the rulemaking procedures, we emphasize that CIGNA should in no way be excluded from, or impaired in its participation in, these procedures due to the timing of this decision. Clearly, CIGNA, as an interested party, is entitled to a "reasonable opportunity to submit data, views or arguments" regarding the proposed new rule and recodification and amendment concerned here. *N.J.S.A.* 52:14B–4(a)(3). In order to afford CIGNA the requisite "reasonable opportunity" in this case, it may be necessary for the Commissioner to extend the deadline for receipt of comments beyond the date provided in the New Jersey Register; April 14, 1993. If such is the case here, the Commissioner is ordered to accommodate CIGNA so that it is granted the same amount of time to submit comments as all other interested parties.