Accordingly, we transfer the case to the Law Division.

811 A.2d 956

SPRINT SPECTRUM, L.P. PLAINTIFF, v. ZONING BD. OF
ADJ. OF TWP. OF GREEN BROOK DEFENDANT

Superior Court of New Jersey
Law Division

July 24, 2002.

*Robert J. Inglima, Jr.,* Woodcliff Lake, (*Price, Meese, Shulman & D'Arminio,* atorneys) for plaintiff.

*Frank N. Yurasko,* Somerville, for defendant.

HELEN E. HOENS, J.S.C.

This matter comes before the Court by way of a complaint in lieu of prerogative writ pursuant to which plaintiff Sprint Spectrum, L.P. seeks to reverse the decision of the Zoning Board of Adjustment of the Township of Green Brook which denied its application for a variance and site plan approval. The facts which give rise to this dispute and the record below are not in dispute. Plaintiff Sprint Spectrum filed an application with the defendant Zoning Board seeking permission to install certain telecommunications equipment within a PSE & G right-of-way located south of Route 22 in Green Brook Township. The plan as proposed would result in the addition of certain antennas near the top of an existing transmission tower. It is undisputed that the lot where the tower is located is partly within the Regional Highway Commercial ("RHC") zone and partly within the Medium Density Residential ("MDR") zone and that transmission towers and antennas are not permitted within either of those zones. In fact, it is conceded that transmission towers are permitted in Green Brook only in the conservation zone ("CA") and the public recreation zone ("PR"). As a result of the foregoing, Sprint Spectrum was required to seek a use variance in order to secure permission to add its proposed antennas to the existing structure. At the same time that Sprint filed its use variance application, it also filed its preliminary site plan with the Township.

The application was deemed complete on July 28, 2000 and a first hearing on the matter was scheduled for November 15, 2000. Sprint contends that by virtue of the requirements of *N.J.S.A.* 40:55D–76(c) the Board was required to act on its application within 120 days of the date on which the application was deemed complete. As a result, Sprint asserts that by statute the Board's

time to decide the issues raised in its application would have expired on November 28, 2000. Sprint contends that on November 15, 2000, counsel appeared along with four witnesses including an engineer and a professional planner who were prepared to testify about radio frequencies, the gap in transmission coverage and need for this location to address the gap, the site suitability and the site selection process.

It is uncontested that on November 15, 2000 the Zoning Board met and conducted some business unrelated to the Sprint application at which time the Board then requested that Sprint consent to an extension of time within which the Board would be able to hear the testimony and reach a decision on the Sprint application. At the time, the Board indicated that it might be able to entertain the application in December, but that because of the number of other matters then already listed for the December meeting, the Board advised the applicant that it did not anticipate being able to entertain the application until January of 2001. After discussion with counsel, the representatives of Sprint determined to refuse the extension that had been requested by the Board. Because the extension was refused, and because the Board believed that there was insufficient time in which to hear and consider the testimony needed to evaluate the application, the Board voted to deny the application in its entirety.

Now before the Court is the application of Sprint to have this Court reverse the denial of the application by Green Brook and to grant it all of the approvals sought. Sprint argues that the Board's denial of the application without a hearing was arbitrary and capricious. Sprint contends it was unwilling to extend the period of time for Green Brook to address its application because of its perception that the Board's treatment of a similar application by another wireless transmission provider was inappropriate. Sprint concedes that its attorney also represents Nextel, another wireless provider which was seeking to place antennas near the top of an existing facility close to the one that Sprint had selected in Green Brook. Sprint contends that the hearings in connection with Nextel's proposal were unduly protracted and were unnecessarily burdensome and that Sprint feared that if it agreed to

extend the Board's time, it would also be forced to endure what it believed would be similar unfair treatment of its application. Counsel for Sprint argues that in his experience similar applications in other communities have been heard and addressed promptly and in a single meeting before the Board and that Green Brook's decision to conduct hearings on the very similar Nextel application over a period of some four months was a motivating factor in the decision by Sprint to refuse any extension.

Sprint argues that because of all of its witnesses were available to testify on November 15, the Zoning Board of Adjustment should have entertained all of their testimony that evening and voted on the application based upon the substance of those presentations. In light of the fact that the Board failed to do so, Sprint contends that the denial of its application without a hearing was arbitrary, capricious and unreasonable. Moreover, Sprint contends that even though the time remaining prior to the expiration of the statutory time frame was limited, the defendant could have scheduled a special meeting and ordered the defendant to appear if the time available on November 15 in fact proved to be insufficient. Finally, Sprint contends that if the Court refuses to grant relief on this record, the 120 day time frame mandated by the statute will become a nullity. Based upon the foregoing, Sprint seeks an order from this Court reversing the action of the Zoning Board and granting all of the approvals sought.

The defendant Township Zoning Board vigorously opposes the relief sought. The Zoning Board points out that once the application was complete, there were four possible regular meetings of the Zoning Board during which time this application could have been considered. The Board points out, however, that plaintiff's counsel, who was also representing Nextel, the other transmission provider, had utilized all of the available meeting time on three of those four dates for that other application, presenting detailed and extensive testimony relating to that application for a nearby tract. Defendant contends that it was the attorney for the plaintiff, in reality, who created a timing crisis, and contends that the sugges-

tion by counsel for plaintiff that an application of this complexity could have been heard in a single meeting or, by extension, that the companion Nextel application could have been decided more quickly than it was, is unrealistic and, in the end, irrelevant. Moreover, the defendant points out that the section of the statute regarding automatic approvals is intended to apply only to extreme situations where an applicant has suffered from unfair treatment which relief defendant contends is inapplicable here. Finally, the defendant contends that if plaintiff had truly been concerned about the statutory time frame, it could and should have requested a special meeting for the purpose of moving its application forward. Defendant suggests that plaintiff's failure to do so was intentional and was part of a larger effort by counsel for the plaintiff to, in the words of defendant's counsel, "sand bag" the Township. The defendant contends that counsel for plaintiff, by filing two complex applications simultaneously, intentionally created an unavoidable situation in which only one could be heard in an effort to preclude careful consideration of either application and urges the Court to uphold the decision to deny the application based on the plaintiff's arbitrary refusal to extend the period of time within which the application could be properly and carefully reviewed and considered.

Counsel for both parties agree that the issue before the Court is one which has not been addressed in any previously published decision. For that reason, we consider it at some length and in some detail. We note, first, that the power vested in the Zoning Board of Adjustment is an important one, and that the acts of the Board are not to be lightly overturned, but rather are ordinarily to be sustained absent a demonstration that the action of the Board was arbitrary, capricious or unreasonable. *Burbridge v. Township of Mine Hill,* 117 *N.J.* 376, 385, 568 *A.*2d 527 (1990). In general, courts must be careful not to act so as to substitute their own views of particular applications for those of the duly appointed governing bodies. *Kramer v. Board of Adjustment of Sea Girt,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). While it

is quite true that these principles, so often quoted by our courts, in general refer to decisions of boards on the merits of specific applications, it is no less true that the actions of the Board on other matters relating to requests for, as here, a use variance, are entitled to equal deference.

Our Appellate Division, in the only reported decision which can be said to touch upon the issue here, noted that statutory provisions which call for an automatic approval must be "applied with caution." *Star Enterprise v. Wilder,* 268 *N.J.Super.* 371, 374, 633 *A.*2d 1001 (App.Div.1993) *citing King v. New Jersey Racing Commission,* 103 *N.J.* 412, 422, 511 *A.*2d 615 (1986). The reason for caution is obvious, for automatic approval deprives the municipality of any exercise of its legitimate regulatory role for essentially procedural failings. In a similar context our Supreme Court has noted that the "municipality cannot unilaterally extend the period within which it must consider a subdivision application" *Manalapan Holding Co. v. Planning Board of Hamilton Township,* 92 *N.J.* 466, 477–78, 457 *A.*2d 441 (1983), but must either grant or deny it within the permissible time frame. There, however, the Court was unwilling to deem the application automatically approved, determining instead that "the appropriate disposition of [the] appeal is to require that the public hearing on plaintiff's application for preliminary subdivision approval be held forthwith." *Id.* at 481, 457 *A.*2d 441. Central to the Supreme Court's decision there was the lack of any evidence of bad faith or sharp practice on the part of the developer who there sought to take advantage of the time limit. The Court noted, therefore, that its remand would appropriately balance the rights of the applicant to be heard promptly with the protection of the public interest as expressed through its municipal body.

As our Appellate Division noted in the similar context of preliminary subdivision appeals, we must be guided in our decision by a recognition that the underlying purpose to be served by any automatic approval provision is protection of the applicant from "municipal inaction and inattention." *D'Anna v. Planning Board*

*of Twp. Of Washington,* 256 *N.J.Super.* 78, 82, 606 *A.*2d 417 (App.Div.), *cert. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992), *quoting Allied Realty Ltd. v. Borough of Saddle River,* 221 *N.J.Super.* 407, 418, 534 *A.*2d 1019 (App.Div.1987), *cert. denied,* 110 *N.J.* 304, 540 *A.*2d 1284 (1988). Here, there is no suggestion in the record that the Board was inattentive or that it failed to act for no reason. Rather, the record bespeaks diligence and care with respect to this and other then pending applications.

While none of these prior decisions addresses the automatic approval mechanism here in dispute, they are sufficiently analogous that the analysis of this record must proceed upon a similar path. While each of the parties to this dispute bluntly accuses the other of evil motivations with respect to the entire course of the proceedings, the evidence of unacceptable conduct by either party is absent. The applicant accuses the Board of the intentional delay, foot dragging and frustrating practices of the type the Supreme Court noted were unacceptable in the *Manalapan* decision. And, equally as vociferously, the defendant Board accuses the applicant and its attorney of precisely the type of sharp practice and overreaching that the Court found would be troubling behavior on the part of an applicant in that very same case. Apart from the assertions of the parties, however, the actual evidence of such behavior, as would be needed for this Court to conclude that the application must be granted without the benefit of any hearing or consideration by the Board, is wholly lacking. To be sure, the Board did not schedule even an initial hearing on this application until virtually the last possible date, but there is no evidence that it did so in an effort to delay or frustrate the applicant. In fact the unrebutted evidence before this Court is that the hearings on the earlier meeting days were entirely devoted to another application filed virtually simultaneously by the same attorney for another telecommunications provider relating to a nearby site. There is no evidence that the Board, for example, failed to meet at all in the intervening months, or listed more recent applications in advance of this one or in any way behaved

so as to frustrate this applicant. On the contrary, the evidence is unrebutted that the Board was diligently pursuing its review of another complex matter. In that regard, the applicant's counsel's suggestion that "other communities" where he has presented similar applications have been more efficient or have required only truncated presentations of supporting evidence is of no consequence, for that argument inappropriately asks this Court to substitute its view of the appropriate level of thoroughness of review for that selected by the body charged with making the decision in the first instance.

Nor for that matter, can we say that the request of the Board was unreasonable. The record does not reflect whether, had the applicant asked, some of the testimony could have been presented on the evening scheduled in November or whether had the applicant asked the Board would have been willing to schedule one or more special sessions to move the application process more quickly. Rather, the record reflects that the applicant, faced with a request for an extension, refused. Whether the applicant believed on that night that the refusal would force the Board to accept some shortened version of testimony to the applicant's advantage we cannot know. What we can know and indeed do know is that the Board believed that it was faced with an impossible task. The applicant's outright refusal to grant any extension left the Board with too little time to hear the evidence it believed, based on the extent of the hearings on the similar Nextel application, it would be required to consider. In that context the issue before this Court is whether the Board's decision to deny the application was arbitrary, capricious or unreasonable. Plainly, given the extensiveness of the earlier application and the then unavoidable shortness of time, the Board's decision was not at all arbitrary or unreasonable.

Our inquiry cannot end there, for in spite of the fact that there was nothing arbitrary or unreasonable in the Board's decision, we are mindful of the admonition of our Supreme Court that the appropriate course is to require that public hearings be held

forthwith. *Manalapan Holding Co. v. Planning Board of Hamilton Township, supra*, 92 *N.J.* at 478, 457 *A.*2d 441. Just as the Court there determined that automatic approval for an application not considered within the time limit it addressed would be inappropriate, so too would simple affirmance of a denial of the application in its entirety on purely procedural grounds be inappropriate. Such a course would unfairly require the applicant to, in effect, commence its application anew, visiting upon it cost and delay entirely avoidable and unnecessary. Mindful, therefore, of the guidance of our Supreme Court, the proper course must be to vacate the Board's denial and remand the matter for a hearing on the merits of the application.

For all of the foregoing reasons, the decision of the Board is vacated and the matter remanded for a hearing and decision on the merits to be completed within 120 days of the date of the order to be entered. Counsel for the plaintiff will kindly prepare an appropriate form of order consistent with this opinion and submit it pursuant to the five day rule. Counsel will kindly contact the Court Clerk to arrange for return of their exhibits and evidence at their earliest convenience.